Alejandro C. MARTINEZ and Dorothy A. Martinez, d/b/a Fleetwood Motel, Appellants (Plaintiffs),

v.

CITY OF CHEYENNE, State of Wyoming and Wyoming State Highway Department, Appellees (Defendants).
Department, Appellees (Defendants).

STATE of Wyoming and Wyoming State Highway Department, Appellants (Defendants),

v.

Alejandro C. MARTINEZ and Dorothy A. Martinez, d/b/a Fleetwood Motel, Appellees (Plaintiffs).

Supreme Court of Wyoming.

May 4, 1990.

Glenn A. Hottenstein, Guy, Williams, White & Argeris, Cheyenne, for Alejandro C. Martinez and Dorthy A. Martinez, d/b/a Fleetwood Motel.

Kenneth G. Vines, Vines, Gusea & White, P.C., Cheyenne, for State of Wyoming and Wyoming State Highway Dept.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The issues in this case relate to jurisdiction, both in this court and in the trial court; procedure, which involves essentially the related questions of jurisdiction; and substantive law relating to damages in a negligence case. The jurisdictional issue with respect to this court is whether the notice of appeal was timely filed. It is not without difficulty that we conclude that the notice of appeal was timely filed. The dual questions of jurisdiction in the trial court concern the scope of the statutory waiver of governmental immunity and the authority of the trial court to enter an order of additur more than 90 days after the entry of judgment. We are satisfied that there was an appropriate waiver of governmental immunity in this instance, and the trial court did have jurisdiction to address the liability of the State of Wyoming. We are equally satisfied that the trial court had no jurisdiction to enter an order of additur more than ninety days after the entry of judgment, and that ruling must be reversed. Perhaps the most interesting of the issues involves the question of liability of a tortfeasor for damages arising out of a flooding of the plaintiffs' property in the course of an unprecedented rainstorm. We conclude that the jury verdict that awarded $36,000 in damages was contrary to the evidence and the instructions given to the jury in view of the evidence of the actual loss the plaintiffs sustained in the amount of $120,000. We reverse the judgment entered by the trial court and remand the case for a new trial on the issue of damages only.

The initial appeal was taken by Alejandro C. Martinez and Dorthy A. Martinez, dba Fleetwood Motel (Fleetwood). In their Brief of Appellants, the issues in the case are described as follows:

"QUESTION 1. Was the trial Court's action vacating the hearing on the motion for additur or new trial set for March 9, 1989, and directing the motion be submitted on briefs with additional argument effective under Rule 59(f), Wyoming Rules of Civil Procedure, as an

extension of time for consideration of the motion for additur or new trial to 90 days or April 11, 1989?

"QUESTION 2. Before appeal by either party, did the District Court have jurisdiction to enter an order granting additur within the appeal period of Rule 2.01, W.R.A.P., but after expiration of the ninety-day period set forth in Rule 59(f) of the Wyoming Rules of Civil Procedure by reason of inherent jurisdiction based on waiver?

"QUESTION 3. Was the jury's verdict allocating to Appellee only $36,000 of Appellants' uncontradicted damages of $120,000 contrary to the evidence and to the Court's instructions?

"QUESTION 4. Did the Court commit error in failing to instruct the jury that there can be no allocation of damages between a rare and unusual storm constituting an act of God and a negligent defendant?"

The State of Wyoming and the Wyoming State Highway Department (State), in their brief as appellee, rephrase the issues asserted by Fleetwood in this way:

"1. Should Appellants' appeal be dismissed because it was not timely filed pursuant to Rule 2.01, Wyoming Rules of Appellate Procedure?

"2. Did the District Court have jurisdiction to enter an Order Granting Additur or New Trial on Damages once the motion for additur or new trial on which the order was based was deemed denied pursuant to Rule 59(f), Wyoming Rules of Civil Procedure?

"3. Did the District Court have authority or jurisdiction to enter on May 9, 1989, an Order Nunc Pro Tunc Continuing Time to Determine the Plaintiffs' Motion for Additur or New Trial after the time period contained in Rule 59(f), Wyoming Rules of Civil Procedure, had run and the motion for additur or new trial had been deemed denied?

"4. Was the jury verdict dated December 5, 1988, proper and regular on its face so that the judgment entered thereon on January 11, 1989 should stand as valid and enforceable thereby making the District Court's granting of a new trial an abuse of discretion?

"5. Did The District Court commit error in failing to instruct the jury that there can be no allocation of damages between a rare and unusual storm constituting an act of God and a negligent defendant?

"6. Did the failure of the trial court to include the plaintiffs on the jury verdict form for comparative negligence purposes constitute reversible error?

"7. Did the failure of the District Court to give a proposed jury instruction offered by the state relating to comparative negligence constitute reversible error?

"8. Is this lawsuit barred by the Wyoming Governmental Claims Act, W.S. § 1–39–101, *et seq.* (1977)?

"9. Did the lower court lack jurisdiction to hear this case pursuant to Article 16, Section 7, Wyoming Constitution, which requires that the claim against the state be certified to under penalty of perjury?"

The State perfected a cross-appeal in which it asserts the following issues:

"1. Did the district court have jurisdiction to enter an Order Granting Additur or New Trial on Damages once the motion for additur or new trial on which the order was based was deemed denied pursuant to Rule 59(f), Wyoming Rules of Civil Procedure?

"2. Did the district court have the authority and jurisdiction to enter on May 9, 1989, an Order Nunc Pro Tunc Continuing Time to Determine the Plaintiffs' Motion for Additur or New Trial after the time period contained in Rule 59(f), Wyoming Rules of Civil Procedure, had run and the motion for additur or new trial had been deemed denied?

"3. Was the jury verdict dated December 5, 1988, proper and regular on its face so that the judgment entered thereon on January 11, 1989 should stand as valid and enforceable thereby making the district court's granting of a new trial an abuse of discretion?

"4. Did the failure of the trial court to include the plaintiffs on the jury verdict form for comparative negligence purposes constitute reversible error?

"5. Did the failure of the District Court to give a proposed jury instruction offered by the state relating to comparative negligence constitute reversible error?

"6. Is this lawsuit barred by the Wyoming Governmental Claims Act, W.S. § 1–39–101 *et seq.* (1977)?

"7. Did the lower court lack jurisdiction to hear this case pursuant to Article 16, Section 7 of the Wyoming Constitution, which requires that a claim against the state be certified to under penalty of perjury?"

Fleetwood, as cross-appellee, responds to the same issues asserted by the State. No separate statement of the issues is presented by Fleetwood.

The material facts in this case are straightforward and uncomplicated, although they were the subject of lengthy interpretation by a number of expert witnesses. Alejandro and Dorthy Martinez own the Fleetwood Motel in Cheyenne and, on August 1, 1985, it was severely flooded when a rainstorm of unprecedented intensity occurred in its vicinity. The Fleetwood Motel fronts East Lincolnway on the eastern edge of the city. East Lincolnway is a part of U.S. Highway 30 as it passes through Cheyenne. Not far from the Fleetwood Motel, a drainage system for diverting water beneath the highway is provided, starting with two lateral culverts that run parallel to the road. Those two lateral culverts empty into one main culvert that crosses the right-of-way underneath the highway. At the time the storm occurred, the primary culvert was partially obstructed by a concrete bulkhead, which had the effect of reducing the capacity of the culvert to carry runoff water by a substantial amount. This particular drainage system services a basin that is approximately four and one-half square miles.

There is no controversy about the fact that, on the day in question, these culverts were inadequate to carry off the water generated by the downpour. Puddles as much as two feet deep formed on the Fleetwood side of the road. The Fleetwood property was inundated by the water and extensively damaged. In an effort to obtain compensation for the damage, Fleetwood sued the State of Wyoming, the Wyoming State Highway Department, and the City of Cheyenne (City) alleging negligence in the design, construction, maintenance, and operation of the highway and its drainage system. The complaint also included claims of inverse condemnation.

The State and the City denied Fleetwood's claims and asserted, instead, that the damage to the motel was an unforeseen catastrophe attributable entirely to natural causes. The defendants contended that the August 1, 1985 storm was unique, extremely rare, and of unprecedented severity. The State further defended by asserting that Fleetwood had failed to mitigate damages; that Fleetwood was contributorily negligent; and that, in any event, the claims were barred by the Wyoming Governmental Claims Act, §§ 1–39–101 to –120, W.S.1977.

Late in November of 1988, the case came to trial, and a verdict was reached promptly. The jury relieved both the State and the City from liability under any theory of inverse condemnation. It also found that the City was not negligent. In its special verdict form, however, the jury did find that the State was negligent in its operation of Highway 30 by reason of its design of the drainage system in and around the Fleetwood Motel; that the State was 100 percent negligent (in response to a question requiring an allocation of negligence that named only the State and the City as actors); and that the damages to the Fleetwood Motel were $36,000. By handwritten insertions in the verdict form, the jury evidenced that it was awarding thirty percent of the total estimate of repairs, which it determined to be $120,000. Nothing was awarded for loss of use or decrease in value of the Fleetwood Motel. The "Judg-

ment on Jury Verdict" was entered on January 11, 1989.

While litigation, like a carousel, goes around and around, we must find a place to get on and a place to get off. We will get on this carousel of litigation by first turning our attention to the jurisdiction of this court since, if the court lacks jurisdiction, any discussion of the other issues would be nothing more than dicta. We have noted the entry of judgment on January 11, 1989. A notice of appeal must be filed within fifteen days from entry of the judgment or final order. Rule 2.01, W.R.A.P.; *State v. Berger*, 600 P.2d 708 (Wyo.1979). This requirement of a timely notice of appeal is both mandatory and jurisdictional. *Berger*. Pursuant to this rule, the notice of appeal had to be filed before January 26, 1989. It was not.

The time for filing a notice of appeal is tolled, however, if a motion for a new trial or a motion to amend or alter a judgment is timely filed. In that event, the time for filing the notice of appeal does not begin to run until an order is entered denying the motion, or the motion is deemed denied pursuant to the provisions of Rule 59(f), W.R.C.P. Rule 2.01, W.R.A.P. Within the fifteen day period permitted by the rule, Fleetwood filed a motion asserting that the judgment should be increased from $36,000 to $120,000 in the form of a "PLAINTIFFS' MOTION FOR ADDITUR OR NEW TRIAL ON THE ISSUE OF DAMAGES AGAINST STATE OF WYOMING." A similar motion filed against the City was later withdrawn. The State responded by asserting that the judgment should stand because it represented a decision within the discretion of the jury. From that point on, the case became a quagmire of judicial procedure generated by a flood of pleadings by the parties. Our task is to traverse the swamp.

The first solid ground may be found in the proposition that the motion by Fleetwood, pursuant to Rule 59(f), W.R.C.P., effectively extended the time for filing the notice of appeal until March 27, 1989, unless the district court ruled upon the motion prior to March 12, 1989. The district court did not do that. On February 6, 1989, a "NOTICE OF HEARING" was entered, setting Fleetwood's motion for hearing on March 9, 1989. That setting later was vacated by means of telephonic advice to counsel from the trial judge's secretary. The hearing never was reset, and no written order was entered at the time that it was continued.

On March 28, 1989, Fleetwood filed additional argument in the matter to which the State responded by filing its "MOTION TO STRIKE PLAINTIFFS' ADDITIONAL ARGUMENT." Fleetwood filed a "MOTION TO EXTEND TIME FOR APPEAL" on April 27, 1989, apparently still anticipating a ruling on its motion even though, in the absence of an extension, the time for such a ruling had expired on March 12, 1989 pursuant to Rule 59(f), W.R.C.P. The same day, the district court issued a decision letter advising the parties that the motion for additur or new trial would be granted as necessary to make the verdict equal to $120,000. The State responded to this decision letter of the court by a letter in which it asserted that the time had expired for the entry of such an order and, consequently, the district court no longer had jurisdiction to rule on the matter. It also asserted that, in any event, the district court must offer the party against whom the additur is to be applied an opportunity to elect a new trial as an alternative to accepting the additur. On April 28, 1989, the district court entered its "ORDER EXTENDING TIME," in which it extended the time for appeal to May 22, 1989, while it further considered the motion for new trial. Fleetwood did not rely upon the April 28, 1989 order but, on May 1, 1989, it filed a "MOTION TO EXTEND TIME TO FILE NOTICE OF APPEAL UNTIL HEARING ON MOTION TO ENTER ORDER," in which it stated that it would soon file a motion to enter an order and requested that the time to file the notice of appeal be extended to May 11, 1989. This motion was granted by the district court. Then, on May 3, 1989, Fleetwood filed a "PLAINTIFFS' MOTION FOR ORDER NUNC PRO TUNC CONTINUING TIME TO DETERMINE MOTION FOR NEW TRIAL"

together with a "PLAINTIFFS' MOTION TO ENTER ORDER ON COURT'S DECISION REGARDING ADDITUR OR IN THE ALTERNATIVE, A NEW TRIAL ON DAMAGES." The State promptly opposed these new motions.

The final shower occurred on May 9, 1989 when the district court entered its "ORDER NUNC PRO TUNC CONTINUING TIME TO DETERMINE THE PLAINTIFFS' MOTION FOR ADDITUR OR NEW TRIAL," in which it confirmed and memorialized both its earlier vacation of the hearing date and its order that the "time for the Court to determine the Plaintiffs' Motion be, and hereby is, extended until a decision of the Court." On the same day, ignoring the jurisdictional concerns expressed by the State, the court also entered its "ORDER GRANTING ADDITUR OR NEW TRIAL ON DAMAGES" and its "AMENDED ORDER EXTENDING TIME TO FILE NOTICE OF APPEAL." This latter order explicitly recognized excusable neglect on the part of Fleetwood.

The next day, the State notified the district court of its rejection of any additur, renewed its claim that the court was without jurisdiction to award additur, and requested a stay of proceedings pending a petition for writ of certiorari or its appeal. The same day, Fleetwood filed a notice of appeal, and the State filed its notice of appeal promptly thereafter.

█ The initial jurisdictional question is the product of this convoluted process in the trial court. If the notice of appeal filed by Fleetwood was not timely, the consequence is that this court is without jurisdiction to pursue the appeal, and it must be dismissed. The keystone for that determination is a resolution of the question of whether the oral advice by the district judge's secretary, pursuant to which the setting of the hearing for March 9, 1989 was vacated, constituted a continuance of the time for deciding the motion. The quest for a solution begins with Rule 59(f), W.R.C.P., which provides:

*"Motions for new trial or to alter or amend a judgment; time limit.—Mo-*tions for new trial and motions to alter or amend a judgment shall be determined within sixty (60) days after the entry of the judgment, and if not so determined shall be deemed denied, unless within such sixty (60) days the determination is continued by order of the court but a continuance shall not extend the time to a day more than 90 days from the date of entry of judgment."

Fleetwood's motion for a new trial or to alter or amend the judgment thus had the effect of terminating the running of the time for appeal until March 12, 1989. Rule 2.01, W.R.A.P. If the determination of that motion was continued by order of the court, the tolling period could extend until April 11, 1989.

The record contains no written order entered prior to March 12, 1989 by which the district court continued the time for determination of the Fleetwood motion presented under Rule 59, W.R.C.P. The State earnestly contends that the omission is fatal. Both parties concede that the telephone call by the judge's secretary did vacate the hearing previously set for March 9, 1989 to address Fleetwood's motion, and this action was accomplished within the sixty day period. Fleetwood's position is that the vacation constituted a continuance of the determination. The State argues that the failure of the district court to reset the hearing date manifests an intention not to continue the matter and that the failure to enter an order continuing the determination forecloses the application of Rule 59(f), W.R.C.P.

This was the problem addressed in *Blake v. Rupe,* 651 P.2d 1096 (Wyo.1982), *cert. denied* 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983). There, construing both Rule 50(b) and 59(f), W.R.C.P., this court said that "nowhere in any of these rules appears any requirement that the order of continuance referred to must be in writing, labeled 'continuance' and signed by the district judge * * *." *Blake,* 651 P.2d at 1111. The rules have not been changed in the intervening eight years. If the effect of the oral notice of vacation of the hearing by the district court was broad enough to

encompass a continuance of the determination of Fleetwood's motion, it is sufficient for that purpose under Rule 59(f), W.R.C.P. *Blake.* We conclude that the nunc pro tunc order of the district court in which it memorialized the continuance of the determination, as well as its later action in ruling that the Fleetwood motion should be granted, is sufficient to demonstrate the intent of the court to continue the determination of the Fleetwood motion until a date not later than April 11, 1989. We recognize the order to vacate as being also an order to continue the determination of the Fleetwood motion, and we hold that the net effect was to continue the time for determining the motion until April 11, 1989.

While no nunc pro tunc written order was necessary to effectuate the extension of the time for determination, the order was a proper method to establish an orderly record, and the effort is useful in the context of this appeal. A nunc pro tunc order serves to rectify omissions from the record so as to make it speak the truth. *See Caillier v. City of Newcastle,* 423 P.2d 653 (Wyo.1967); *Barrett v. Whitmore,* 31 Wyo. 301, 226 P. 452 (1924). The nunc pro tunc order itself did not, and it could not, effect the continuance. This conclusion makes it unnecessary to address further the issue presented by the State with respect to whether the district court had jurisdiction to enter its May 9, 1989 "ORDER NUNC PRO TUNC CONTINUING TIME TO DETERMINE THE PLAINTIFFS' MOTION FOR ADDITUR OR NEW TRIAL." That was not an order that is of consequence in determining the appeal.

We also note that the State, after the oral advice of the vacation of the hearing furnished by the district judge's secretary, appeared and contested matters without asserting any objections on the basis of lack of jurisdiction. Both parties considered the Fleetwood motion as undisposed of, and both parties treated the situation as one in which the determination by the district court had been continued. The effect of this conduct of the parties, while not amounting to a consent to jurisdiction, does serve as a waiver of any right to protest the thirty-day extension permitted by Rule

59(f), W.R.C.P. *Blake; Board of Commissioners of Natrona County v. Casper National Bank,* 55 Wyo. 144, 96 P.2d 564 (1939).

■ Thus far, we have only justified an extension of the time to file the Fleetwood notice of appeal until April 26, 1989. The filing of the notice of appeal on May 10, 1989 can only be sustained if, within thirty days after April 11, 1989, the district court found excusable neglect on the part of Fleetwood in not filing its notice of appeal by April 26, 1989. In its "AMENDED ORDER EXTENDING TIME TO FILE NOTICE OF APPEAL," the district court found excusable neglect on the part of Fleetwood and continued the time to file the notice of appeal to May 11, 1989. We agree that Fleetwood's delay was that of a reasonably prudent person confronted with the particular circumstances of this case, and we affirm the ruling of the district court that excusable neglect did exist for failure to file the notice of appeal within fifteen days after the "PLAINTIFFS' MOTION FOR ADDITUR OR NEW TRIAL ON THE ISSUE OF DAMAGES AGAINST STATE OF WYOMING" was deemed denied on April 11, 1989. See *Crossan v. Irrigation Development Corporation,* 598 P.2d 812 (Wyo.1979).

■ Having resolved the question of this court's jurisdiction, we turn to the questions of jurisdiction that were posed with respect to the district court. The first of those is found in the State's argument that the action on the part of Fleetwood is barred by the Wyoming Governmental Claims Act, §§ 1–39–101 to –120, W.S.1977. The State first reminds us that statutes that waive governmental immunity must be strictly construed. *Harrison v. Wyoming Liquor Commission,* 63 Wyo. 13, 177 P.2d 397 (1947). From this premise, the State argues that any suit filed against it must be specifically authorized by statute and that authority for a suit of this nature has not been so authorized. It argues that only two provisions of the Wyoming Governmental Claims Act, §§ 1–39–108(a) and 1–39–111, W.S.1977, could possibly justify

the action by Fleetwood in this instance. The State contends that neither statute is applicable to these circumstances.

We recognize that any action against the State must be authorized by the legislature and that courts are without jurisdiction to proceed in any case that has not been so authorized. Wyo. Const. art. 1, § 8; § 1–39–104, W.S.1977; *Worthington v. State,* 598 P.2d 796 (Wyo.1979); *Retail Clerks Local 187 AFL–CIO v. University of Wyoming,* 531 P.2d 884 (Wyo.1975); *Hamblin v. Arzy,* 472 P.2d 933 (Wyo.1970); *Price v. State Highway Commission,* 62 Wyo. 385, 167 P.2d 309 (1946); *Utah Construction Company v. State Highway Commission,* 45 Wyo. 403, 19 P.2d 951 (1933). We do not accept, however, the State's contention that neither of the cited provisions has any efficacy in this instance. Instead, we conclude that § 1–39–111, W.S. 1977 (Cum.Supp.1985), one of the sections cited by the State, does provide the requisite authority for this suit. That statutory provision was repealed in 1986, but it was in effect at the time of this occurrence, and it provided:

> "A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of public facilities within the jurisdiction of the employing governmental entity."

■ The State concedes that this provision includes highways within the scope of the term "public facilities." *State v. Stovall,* 648 P.2d 543 (Wyo.1982). It argues, however, that it is not applicable in this case because it only justifies actions that seek recovery of damages arising from an automobile or motorcycle accident. We have discovered no language, nor any precedent, that would justify limiting the statutory provision in this manner, and we are not prepared to construe it so narrowly. The phrase "operation or maintenance of public facilities" is broad enough to encompass all situations relating to the facility in question, and it does not serve to limit liability to negligence occurring in the use of a highway by a motorist. In addition, we are satisfied that "public facility" is broad enough to encompass all components incorporated in the highway, including a drainage system to permit water to flow underneath it.

■ The State presents a further argument to the end that § 1–39–111, W.S.1977 (Cum.Supp.1985), does not authorize the cause of action presented in the trial court because it does not explicitly refer to the design or construction of a public facility, the conduct for which the jury found the State negligent. The State argues that the statute refers only to the "operation or maintenance" of the public facility. We are not constrained to read the statute as narrowly as the State does. In our view, the "operation and maintenance" of a public facility is broad enough to include the design and construction of the facility, especially when the function of the component that allegedly failed, the main culvert in this instance, is to provide for the operation and maintenance of the primary component.

■ In support of its position, the State also argues that the subsequent enactment of § 1–39–120, W.S.1977 (Cum.Supp.1986), which specifically provided that liability under the Act does not include liability for damages caused by a "defect in the plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area," manifests a legislative intent not to include liability for such a defect under the original statute, and that this legislative intent is entitled to retroactive effect. *See* § 1–39–120(a)(i), W.S.1977 (Cum.Supp. 1986). The State argues that an action like the one brought on behalf of Fleetwood could not be brought under similar circumstances today. We do not rule upon this contention because the repeal of the earlier version of the statute is of no moment to this case. The statute that we have noted previously was in effect at the time of the rainstorm in 1985. Our general rule is that retroactive legislation is not favored, and the statute will be construed prospectively unless there is clear evidence of a contrary legislative intent. *Wyoming Refining*

*Company v. Bottjen,* 695 P.2d 647 (Wyo. 1985); *Johnson v. Safeway Stores, Inc.,* 568 P.2d 908 (Wyo.1977); *Bemis v. Texaco, Inc.,* 400 P.2d 529, *reh. denied* 401 P.2d 708 (Wyo.1965); *State, ex rel. Lynch v. Board of County Commissioners,* 75 Wyo. 435, 296 P.2d 986 (1956); *Mustanen v. Diamond Coal & Coke Company,* 50 Wyo. 462, 62 P.2d 287 (1936). No such evidence has been brought to our attention, and we reject the argument of the State that the Fleetwood claim was not permitted under the provision of § 1–39–111, W.S.1977 (Cum.Supp.1985), in effect at the time of this occurrence, and that the statute is to be interpreted in light of a subsequent amendment. We hold that the Fleetwood claim was authorized by § 1–39–111, W.S. 1977 (Cum.Supp.1985), and that the court was not without jurisdiction to entertain the claim.

■ In the last issue asserted in its appeal, the State contends that the trial court did not have jurisdiction to proceed because Fleetwood failed to comply with Wyo. Const. art. 16, § 7. This constitutional provision requires, *inter alia,* that any claim against the State be "certified to under penalty of perjury." Wyo. Const. art. 16, § 7. Specifically, the State asserts that Mr. and Mrs. Martinez, acting on behalf of Fleetwood, failed to make the certification under penalty of perjury when they first presented their claim and that, since proper filing of a claim is a condition precedent to suit, their claim cannot be brought because it was not properly filed. *Wyoming State Highway Department v. Napolitano,* 578 P.2d 1342 (1978); *Awe v. University of Wyoming,* 534 P.2d 97 (1975); *Utah Construction Company v. State Highway Commission,* 45 Wyo. 403, 19 P.2d 951 (1933).

This particular contention by the State is raised for the first time in this appeal. The point was never argued to the district court. The State agrees that this is true, but it contends that an omission of the correct certification results in a failure of subject matter jurisdiction, and the issue can be raised at any time in the proceeding. We do not agree with this contention. The failure to verify or certify as the constitution now reads is nothing more than a defect or an irregularity that is not jurisdictional. *In re Bear River Irrigation District,* 51 Wyo. 343, 65 P.2d 686 (1937). The effect of that decision is that this alleged defect is not jurisdictional and, for that reason, the defense cannot be raised for the first time on appeal. *Matter of Estate of McCue,* 776 P.2d 742 (Wyo.1989); *Ricci v. New Hampshire Insurance Company,* 721 P.2d 1081 (Wyo.1986); *Dennis v. Dennis,* 675 P.2d 265 (Wyo.1984); *Nickelson v. People,* 607 P.2d 904 (Wyo.1980); *Scherling v. Kilgore,* 599 P.2d 1352 (Wyo.1979). We apply our well-established rule concerning those issues raised for the first time on appeal, and we reject this contention by the State.

■ Continuing with jurisdictional claims, we next address the argument by the State that the district court no longer had authority to enter its order granting additur or a new trial on May 9, 1989. We hold that, at this juncture, the State has found some solid ground in the swamp. Rule 59(f), W.R.C.P., provides, in pertinent part, without equivocation, that:

> " * * * [A] continuance shall not extend the time to a day more than 90 days from the date of entry of judgment." (Emphasis added.)

The clear language of the rule leaves little room for interpretation. *See Halliburton Company v. McAdams, Roux & Associates, Inc.,* 773 P.2d 153 (Wyo.1989); *In re Adoption of MM,* 652 P.2d 974 (Wyo.1982); *Board of County Commissioners of Campbell County v. Ridenour,* 623 P.2d 1174, *reh. denied* 627 P.2d 163 (Wyo.1981); *Oroz v. Hayes,* 598 P.2d 432 (Wyo.1979). The Fleetwood motion was deemed denied on April 12, 1989. *Johnson v. Hauffe,* 567 P.2d 735 (Wyo.1977). In justifying the timely filing of the notice of appeal, we concluded that the court had continued its determination beyond the sixty days provided in the rule. Still, the determination cannot be continued to a date more than 90 days from the date of the judgment. At this final deadline, the motion again is deemed denied, and the judgment becomes

final in the form in which it was entered originally. *Sun Land & Cattle Company v. Brown,* 387 P.2d 1004 (Wyo.1964). We do not permit exceptions to this rule.

In this instance, the ninetieth day following the entry of judgment was April 11, 1989. After that date, the district court had no alternative other than to recognize that the motion had been denied. From then on, it was without power or jurisdiction to enter any subsequent order granting the motion. *Blake,* 651 P.2d 1096. Once the ninety-day period after the entry of the judgment or final order has elapsed, the only further relief available to a party challenging the judgment or final order through a motion to alter or amend the judgment or, in the alternative, for a new trial must be by appeal to this court. See *Matter of Estate of Campbell,* 673 P.2d 645 (Wyo.1983); *Berger,* 600 P.2d 708; *Hauffe; McMullen v. McMullen,* 559 P.2d 37 (Wyo.1977); *Sun.* The district court no longer had jurisdiction to enter the order granting the additur or, in the alternative, the new trial as of May 9, 1989, and its order has no efficacy. *Matter of Contempt Order Issued Against Anderson,* 765 P.2d 933 (Wyo.1988). Fleetwood relies upon *Blake; Matter of Estate of Potter,* 396 P.2d 438 (Wyo.1964); *Brasel & Sims Construction Company v. Neuman Transit Company,* 378 P.2d 501 (Wyo.1963); and *Board of Commissioners of Natrona County v. Casper National Bank,* 55 Wyo. 144, 96 P.2d 564 (1939), in asserting that any jurisdictional defect was waived by the conduct of the parties. These cases are distinguishable from the instant case and, therefore, do not establish the proposition asserted. They are concerned only with a continuance of the determination within the sixty-day period and have no application to a case in which an order is entered after the ninety-day period has run. The jurisdiction to enter an order has been lost, and that lack of jurisdiction cannot be waived. *Anderson; Blake.* The only avenue of relief then available to Fleetwood is to attack the judgment on appeal.

Confident in our belief that we have drained the jurisdictional and procedural swamp, we turn to the merits. The merits are addressed by the third and fourth questions articulated by Fleetwood in its brief, and they are responded to in the fourth and fifth issues in the brief of the State as appellee. The essence of the question posed is whether the verdict awarding $36,000 in damages to Fleetwood was contrary to the evidence and to the instructions of the court. We recall that the jury found the State to be 100 percent negligent; that Fleetwood had established repair costs totaling $120,000; and that the damage award was stated to be thirty percent of that, or $36,000. We must decide whether the jury arrived at a proper award in light of the evidence and the law. Fleetwood contends that the verdict is improper and urges this court to either grant judgment awarding it compensation equivalent to the sum of its losses, pursuant to Rules 1.04 and 7.03, W.R.A.P., or to remand the case for a new trial on damages. In our judgment, this is not an appropriate case to grant the request for a modification of the judgment. There are potentially dispositive questions of fact that should be resolved by a jury. We agree, however, that the jury verdict was improper and, for that reason, we remand the case for a new trial on the issue of compensatory damages.

The objective of a damage award in a tort case is to compensate the plaintiff for a proven loss or injury caused by the negligent or intentional conduct of another. *Douglas Reservoirs Water Users Association v. Cross,* 569 P.2d 1280 (Wyo.1977); *Walton v. Atlantic Richfield Company,* 501 P.2d 802 (Wyo.1972). When the action sounds in negligence, as in this case, the award should be designed to compensate the injured party in full measure for the total harm proximately caused by the breach of the defendant's duty. *First Wyoming Bank, Casper v. Mudge,* 748 P.2d 713 (Wyo.1988); *Atlas Construction Company v. Slater,* 746 P.2d 352 (Wyo.1987); *Hagar v. Mobley,* 638 P.2d 127 (Wyo.1981). *Cf. Texas West Oil & Gas Corporation v. Fitzgerald,* 726 P.2d 1056 (Wyo.1986) (injured party entitled to compensation for all the detriment proximately caused by a

breach of duty in the context of intentional interference with contract).

On the other hand, a negligent defendant is not liable for loss or injury, or any part of an injury, not proximately caused by his breach of duty. This policy now is reflected in § 1–1–109, W.S.1977 (June 1988 Repl.). *Compare Ridenour*, 623 P.2d 1174 (an analysis of comparative negligence in Wyoming as of the time of that decision.) In a situation in which a plaintiff suffers either several distinct and separate injuries or a single injury from distinct and separate causes, damages are apportioned in a ratio determined by the ratio of cause to harm. *Restatement (Second) of Torts* § 433 A (1965). This apportionment is appropriate and is made even in an instance in which some part of the harm can be attributed to an entirely innocent cause such as an unprecedented and unforeseen rainfall. In such an event, the liability of the tortfeasor hinges on the extent that the naturally occurring and noncompensable harm has been aggravated or enhanced by his conduct. *Restatement (Second) of Torts* § 433 A, Comment e.

It is the function of the jury to apply the law as it has been explained by the court. See cases cited in 88 C.J.S. *Trial* § 297 (1955). The jury is not justified in furnishing its own interpretation of the law nor in arriving at its verdict in the light of its view as to the way things ought to be. Permitting the jury to determine the rules of law without guidance from the court, among other things, creates a substantial risk of inconsistent verdicts in very similar cases. The duty of the court, on the other hand, is to provide sufficient instruction to allow the jury to apply the appropriate law correctly. Shortfall in performing the responsibility of either the court or the jury results in an injustice to the parties, and a new trial is mandated. We add that neither the court nor the jury is permitted to speculate or engage in conjecture in awarding damages. *Reposa v. Buhler*, 770 P.2d 235 (Wyo.1989); *Reiman Construction Company v. Jerry Hiller Company*, 709 P.2d 1271 (Wyo.1985); *Krist v. Aetna Casualty & Surety*, 667 P.2d 665 (Wyo.1983).

In this instance, the jury determined that the State had breached its duty to Fleetwood in its design of the highway. It also found that the State was 100 percent negligent in the comparative negligence formula which involved only the State and the City. Finally, it determined that the cost of repairs to the Fleetwood Motel equalled $120,000. By handwritten amendment of the verdict form, the jury then determined the damages to be thirty percent of $120,000, or $36,000. Fleetwood argues, in a straightforward manner, that the only way to interpret this verdict is that the State is responsible for 100 percent of the damages and that the only damages that can be discerned from the verdict are the repair costs of $120,000. If we were to accept Fleetwood's contention and apply Rule 1.04, W.R.A.P., we would simply modify the judgment entered by the district court to reflect an error found in the record. The cases that we follow for guidance in ascertaining damages in tort, however, also inject proximate cause of the injury into the equation. *Mudge; Atlas; Hagar; Fitzgerald; Douglas.*

We then must determine whether, given the assignment of 100 percent of the negligence to the State by the jury in its verdict, there can be an apportionment of damages. The State earnestly contends that, given the severity of this torrential downpour, there would have been some flooding of the Fleetwood Motel in the absence of any negligence on its part. The verdict returned by the jury would seem to indicate that, in some way, the jury had developed an apportionment formula. If that speculation is not valid, then further conjecture raises the possibility of a depreciation factor, or a factor of enhanced value following the repairs. Certainly, the record does not explain how the jury arrived at the thirty percent factor in awarding damages.

The resolution by the jury could very well be what is fair and just under the circumstances. We have already noted that the State is responsible only for the damage that is the proximate result of its negligence. *Mudge; Atlas; Hagar; Fitzgerald; Douglas.* Conceding that possibility, however, the record does not justify a

conclusion that the verdict that was returned was proper in accordance with the evidence and the instructions.

Question Four in the special jury verdict alludes to the negligence of the State of Wyoming as being one of the proximate causes of flooding in and around the Fleetwood Motel. There is a clear implication that there could be more than one proximate cause and, quite likely, that language encompassed the participation of the City whose liability had not been determined at that stage. That question would not lead to an apportionment of damages, however. The only instruction that would seem to fit into the apportionment context is Instruction No. 13, which reads as follows:

"INSTRUCTION NO. 13

"A proximate cause of an injury is a cause which in direct, unbroken sequence produces injury. It is one without which the injury would not have occurred."

We are satisfied that there was no instruction given the jury that would permit an apportionment of the damages. Nevertheless, the jury arrived at a damage award of thirty percent of the repair cost. We assume that juries understand and follow the instructions given to them. *Goggins v. Harwood*, 704 P.2d 1282 (Wyo. 1985). The concomitant of that proposition is that when a verdict is returned that is inconsistent with the instructions, like the one reached in this case, the verdict must be one as to which the jury has applied its own interpretation of the law, or it is a product of conjecture and speculation. In either event, the verdict cannot stand. *See Reposa; Reiman; Krist.* Mere uncertainty with respect to the amount of damage does not foreclose recovery. *Opheim v. United Mobile Homes, Inc.*, 511 P.2d 1289 (Wyo.1973). The remedy in such a situation is to modify the judgment pursuant to Rules 1.04 and 7.03, W.R.A.P., or to remand for a new trial. Because we earlier have noted that it would not be appropriate to modify the judgment in this case, we conclude that it should be remanded for a new trial on a question of damages.

This brings us to the question of whether the district court appropriately should have instructed the jury that there can be no apportionment of damages between a so called "act of God" and a negligent defendant. Fleetwood, invoking *Ely v. Kirk*, 707 P.2d 706 (Wyo.1985), and *Sky Aviation Corporation v. Colt*, 475 P.2d 301 (Wyo.1970), argues that the theory behind the State's defense was the defense of an "act of God." They argue that the assertion of that theory must be confined by clarifying instructions and urge that, in the absence of such instructions, a jury is likely to apportion damages between the act of God and the negligent party. Fleetwood contends that this is an impermissible response under the law, but is probably the explanation for the reduction in damages in this case. The State contends, and Fleetwood does concede, that it did not assert the defense of an act of God at the trial. The record does demonstrate, however, that the State argued to the jury that the 1985 flood was a unique and unusual event beyond its control and that the damage to the Fleetwood Motel was inevitable because of the natural events.

At the trial, Fleetwood requested the following instruction:

"The defendants have the burden of establishing by a preponderance of the evidence that the alleged damages were caused solely by an act of God. An act of God is any accident due directly and exclusively to natural causes without human intervention which by no means of foresight, anticipation or care, reasonably to have been expected could have been prevented.

"In order for an act of God to be a defense to the Plaintiffs' claims in this matter the act of God must be the only cause of injury. There can be no combination of an act of God and fault of man as a presence of the fault of man eliminates the act of God as a defense."

The district court refused to give the instruction and, after analyzing the arguments and authorities presented by the parties, we agree that the instruction was improper although perhaps for different reasons than those espoused by the State and

the trial court. In *Cox v. Vernieuw*, 604 P.2d 1353 (Wyo.1980), we held that an "act of God" defense is superfluous in a negligence case and should not be considered. The rationale was that "an act of God is no more than another way of saying that the defendants were not negligent." *Cox*, 604 P.2d at 1358. If the theory is espoused by the jury, it is simply finding that there was no negligence on the part of a defendant. See *Ely*. It follows in this case that, because the defense of an act of God is superfluous and inappropriate, the instruction pertaining to the defense is equally superfluous and inappropriate. *Cox; Ely.* If clarifying instructions are to be given, they are better served by incorporating them in a well-drafted instruction on proximate cause rather than by instructing separately on the defense of an act of God.

We perceive another danger in such an instruction. The duty of establishing negligence is that of the plaintiff. The effect of the instruction offered would be to require the defendant to establish non-negligence, i.e., that the damage was attributable to a so-called "act of God." We think it is antithetical to the rule that imposes the burden of proof on the plaintiff to show by a preponderance of the evidence the duty of the defendant, the breach of that duty, and the injury to the plaintiff proximately caused by that breach. *Ely; Pine Creek Canal No. 1 v. Stadler*, 685 P.2d 13 (Wyo. 1984); *Tavares v. Horstman*, 542 P.2d 1275 (Wyo.1975). While assignment of the burden of proof to the defendant would be appropriate if an act of God were truly an affirmative defense, *see Anderson v. Schulz*, 527 P.2d 151 (Wyo.1974); *Tavares*, in light of our holdings that this is not an affirmative defense but, simply, addresses the essential elements of the cause of action in tort, such an instruction should not be given. It would seem to accomplish nothing more than a shifting of the burden of proof to a defendant. This determination that no error occurred when the court refused the instruction is particularly appropriate in this instance because the defendant, the State, never did request such an instruction. Furthermore, we agree with the State's argument that it was not

relying on an act of God defense merely because it argued that the damage to the motel was the product of natural events. See *Cox; Ely*.

 This brings us to the two remaining questions with respect to whether reversible error was committed by the failure of the district court to include the Martinezes on the jury verdict form as actors for purposes of comparative negligence and by failing to give the proposed instruction of the State on comparative negligence. These two questions relate to the same topic and are resolved by the same rationale. The State's first contention is that § 1–1–109, W.S.1977, requires that Mr. and Mrs. Martinez be included on the jury form to provide a three-way consideration of comparable negligence among the State, the City, and Fleetwood. In pertinent part, § 1–1–109, W.S.1977, provides:

"(b) The court may, and when requested by any party, shall:

"(i) If a jury trial:

"(A) Direct the jury to find separate special verdicts determining the total amount of damages and the percentage of fault attributable to each actor whether or not a party; and * * *."

The State's proposed jury instruction, which was refused, addresses this subject of comparative fault on the part of Fleetwood and then encompasses an additional instruction mandating no recovery if there is fifty percent or more negligence attributable to Fleetwood. This statute is limited to its invocation "in those cases only where the plaintiff is contributorily negligent." *Palmeno v. Cashen*, 627 P.2d 163, 166 (Wyo.1981). If the evidence does not disclose negligence on the part of the plaintiff, the statute does not apply. *Palmeno*. The district court ruled that there was no evidence of negligence on the part of Fleetwood that would justify its inclusion on the verdict form as an actor as to whom negligence could be attributed. Our examination of the record results in our reaching a similar conclusion and demonstrates that there was no error in the failure to give this instruction. Because Mr. and Mrs. Martinez were not negligent, the statute

does not mandate their inclusion on the verdict form. It would have been inappropriate for the district court to give an instruction that was not sustained by the evidence. *See Hernandez v. Gilveli*, 626 P.2d 74 (Wyo.1981); *Beard v. Brown*, 616 P.2d 726 (Wyo.1980); *Edwards v. Harris*, 397 P.2d 87 (Wyo.1964). The State's attempt to distinguish *Palmeno* by pointing out that it was tried to a judge rather than to a jury is not effective. That distinction serves only to trigger separate sections of the statute, *see* § 1–1–109, W.S.1977, but it does not make any difference in the result. The entire statute has no application if the evidence fails to disclose any negligence attributable to an actor, whether a party or not, that would justify the jury considering attributing negligence to that actor.

We dismount the carousel by summarizing. We hold that the notice of appeal in this case was timely filed and that we have jurisdiction to consider the other issues. The action is not barred by the Wyoming Governmental Claims Act, §§ 1–39–101 to –120, W.S.1977 (1985 Repl.), and the alleged failure of Fleetwood to comply with Wyo. Const. art. 16, § 7, did not deprive the district court of jurisdiction. Furthermore, the question of whether the district court had jurisdiction to enter its Order Nunc Pro Tunc Continuing Time to Determine the Plaintiffs' Motion for Additur or New Trial is of no consequence to the outcome of this appeal and need not be decided. The district court did not err in refusing to instruct the jury that there can be no allocation of fault between a natural event and an act of negligence of a defendant. The district court did not commit any error by refusing to include the Martinezes on the jury verdict form as actors for purposes of comparative negligence nor by refusing to give the State's proposed jury instruction on comparative negligence. We agree that the district court did not have jurisdiction to enter its order granting additur or new trial at the time it did so and its order so entered is void and of no effect. The jury verdict was not proper under the facts and the law, however, and we remand the case

for a new trial on the issue of compensatory damages.

Reversed and remanded for further proceedings in accordance with this opinion.

URBIGKIT, J., filed a concurring opinion.

URBIGKIT, Justice, concurring.

I concur in the decision and generally in the basic logic developed for resolution. However, I write further to reject any supposition contained in the statements of the majority opinion that the legislature can, by limiting legislation, control rights of access for citizens to enforce guarantees of the Wyoming Constitution.[1] Constitutional rights are not subject to validation at the whim of the state legislative authorization. Discussion to the contrary in the majority opinion is clearly unprepossessing dictum for the decision rendered here where the appeal is not constitutional in concept. Compare *Cooney v. Park County, Wyoming*, 792 P.2d 1287 (Wyo.1990), Urbigkit, J., dissenting, with *White v. State*, 784 P.2d 1313 (Wyo.1989), Urbigkit J., dissenting.

The modern persuasion of state jurists generally recognizes that the foundational support for maintenance of state constitutional guarantees has become their primary, and not a secondary, responsibility as now effectively recognized after prodding from the federal judiciary. As Justice William J. Brennan, Jr. stated in the foreword in J. Grodin, *In Pursuit of Justice*, xiv-xv (1989):

> The very premise of the cases that foreclose federal remedies constitutes a clear call to state courts to step into the breach. With the federal locus of our double protection weakened, our liberties may suffer irretrievably if the state courts are not quick to take on the challenge the United States Supreme Court has laid down. * * *

Thus, the significance of the role of state courts in dispensing justice becomes greater each day. Without de-

---

1. "[A]ny action against the State must be authorized by the legislature and that courts are without jurisdiction to proceed in any case that has not been so authorized."

tracting in the slightest from the work of the federal courts, it is fair to say that the decisions that affect people's day-to-day lives most fundamentally are increasingly made by state courts.

It is for us to recognize that responsibility for the Wyoming Constitution is the absolute obligation of this state judiciary within the oath of office which each person honored by appointment provides to protect and defend. This subject is pervasively and appropriately addressed by the Michigan Supreme Court in *Smith v. Department of Public Health,* 428 Mich. 540, 410 N.W.2d 749 (1987), *cert. granted sub nom. Will v. Michigan Department of State Police,* 485 U.S. 1005, 108 S.Ct. 1466, 99 L.Ed.2d 696 (1988), *judgment aff'd sub nom. Will v. Michigan Department of State Police,* —— U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *See Widgeon v. Eastern Shore Hosp. Center,* 300 Md. 520, 479 A.2d 921 (1984). *See also Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803) and the foundational construction of the controlling philosophy developed by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Any suggestion that the legislature can legislatively amend the Wyoming Constitution by either negative enactment or denial of affirmative access legislation is not only unacceptable in concept, but contrary to the state jurist's judicial responsibility. I am absolutely committed to a basic philosophy that constitutional wrongs are *always* subject to correction by the judiciary as the independent third branch of government in our democratic constitutional society. If not, we have no real present constitutional government or realistic promise of a continued democratic society.