2001 WY 85

**Susie and Elroy ADDAKAI, husband and wife, Appellants (Plaintiffs),**

**v.**

**William and Debra WITT, husband and wife, Appellees (Defendants).**

**No. 00–29.**

Supreme Court of Wyoming.

Sept. 11, 2001.

Rehearing Denied Oct. 23, 2001.

William L. Combs of Combs Law Office, Evanston, WY, Representing Appellants.

Daniel T. Massey of Harrison and Massey L.L.C., Rawlins, WY, Representing Appellees.

Before LEHMAN, C.J., and GOLDEN, HILL and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellants Addakais became interested in buying a thoroughbred mare from appellees Witts and, after providing a down payment, requested an opportunity to ride the horse while it was still on the Witts' premises. While on a test ride, Mrs. Addakai was thrown from the horse and sustained injury. The Addakais sued alleging, *inter alia*, negligence, negligent misrepresentation, strict liability, and conversion (the down payment was not returned). The district court granted the Witts partial summary judgment on the strict liability issue, and a jury found in favor of the Witts on the remaining counts. The Addakais appeal claiming misleading jury instructions and irregularities in the special verdict form. Finding that the instructions were a proper reflection of the law and that the Addakais failed to properly reserve the special verdict form issue for appeal, we affirm.

### ISSUES

[¶ 2] Appellants Addakais articulate two issues:

[1] Whether appellants should receive a new trial on their negligence claims due to the misleading, confusing and prejudicial jury instruction under the Landowner Liability Act.

[2] Whether appellants should receive a new trial on their negligence claims due to irregularities surrounding the special verdict form which deprived appellants of a fair and impartial jury, and resulted in a verdict contrary to the weight of the evidence.

Appellees Witts expand a bit on the same general theme in their statement of the issues:

[1] Was the jury instruction relative to landowner liability an accurate statement of the law and relevant[?]

[2] Can appellants now object to a verdict form when they did not object to the verdict form at trial[?]

[3] Did the verdict form cause the jury to reach a verdict contrary to the weight of the evidence[?]

### FACTS

[¶ 3] The horse at the center of this controversy is a thoroughbred bay mare named Cindy Mist. Cindy Mist was purchased by a third party shortly after she retired from racing at Vernal, Utah, and then sold to a gentleman by the name of Bill Haines. Mr. Haines, 85 years of age at the time, retrained Cindy Mist using a snaffle bit, although he

and a female acquaintance frequently rode the horse using nothing but a hackamore. A hackamore, also known as a bosal, is a rigid oval, usually made from braided rawhide, fitting around the horse's nose. There is no bit in the horse's mouth, and commands are given by applying pressure to the horse's nose and jaw.

[¶ 4] In early 1994, Dr. Clayton Van Balen purchased Cindy Mist from Bill Haines. Dr. Van Balen never observed the horse behaving in any other than the most gentle fashion, and his affidavit to that effect was read into the trial transcript. Appellee Bill Witt had ridden virtually his entire life, but Mrs. Witt was just learning to ride. One of those riders with whom Cindy Mist was so gentle, according to Dr. Van Balen's affidavit, was Mrs. Witt.

[¶ 5] While working at the Jim Bridger Power Plant near Rock Springs, the Addakais were on the lookout for a horse to purchase and were referred for that purpose to the Witts by a veterinarian. After two preliminary viewings of Cindy Mist, the Addakais agreed to purchase the animal for $1,000, giving the Witts a $500 down payment and planning to take the horse back to their home in Arizona at the conclusion of their job.

[¶ 6] On May 12, 1995, the Addakais called Mr. Witt to inquire about coming by for a "test ride" of Cindy Mist. When the Addakais arrived at the corrals, Cindy Mist was fitted with a western saddle and a hackamore. Mrs. Addakai had ridden quarter horses and mustangs since childhood but had no experience with thoroughbreds. She was used to riding with a snaffle bit, which consists of a jointed metal bar that passes through the horse's mouth and is more likely to command the horse's attention. Everyone was aware that the mare was in season (estrous), but she was ridden by Mr. Witt without incident. Mr. Addakai then rode Cindy Mist out of the corral area and up over a hill onto some property maintained by the Bureau of Land Management. Nothing in the horse's demeanor alarmed the Addakais. Mr. Addakai did feel that the horse was a bit "hyper," but did not feel a need to communicate that concern to his wife, telling her rather that the horse was fine. Mrs. Addakai relied upon her husband's judgment and "figured this horse is pretty good and he says, gentle horse, so that's why I sat on it."

[¶ 7] Mr. Witt and Mr. Addakai watched Mrs. Addakai ride out over the same hill that Mr. Addakai had traversed moments before, but the two men then went with Bill Haines to look at a horse trailer Mr. Addakai was interested in buying. The men then heard Mrs. Addakai "hollering," and observed her hanging on for dear life while the horse moved at a trot back towards the corral. The reins were flopping at the sides of Cindy Mist's head, and Mrs. Addakai had a hold on the saddle horn with both hands. The horse eventually broke into a lope but then did a quick 90 degree turn at the corral, throwing Mrs. Addakai, who then experienced a violent collision with a horse trailer that was parked in front of the corral. Mr. Witt immediately summoned an ambulance. Though not life-threatening, Mrs. Addakai's injuries, including broken ribs, a back injury, and head lacerations requiring 100 stitches, were sufficient to warrant her hospitalization for the next three days.

[¶ 8] Throughout the following three months, the Witts tried repeatedly to contact the Addakais without success. Eventually the Witts could no longer afford to maintain Cindy Mist and sold her to Shawn McWilliams. Mr. McWilliams felt that Cindy Mist was a gentle horse and allowed his son, who had been severely injured in a horse accident two years earlier, to ride her.

[¶ 9] Eventually, the Addakais filed suit against the Witts, alleging that Mrs. Addakai was suffering from post traumatic stress disorder (PTSD), had become timorous around animals, and was facing the prospect of spinal fusion surgery. A physician who evaluated Mrs. Addakai after her return to Arizona noted that it is a cultural trait of the Navajo Tribe, of which both the Addakais are native, to minimize pain and discomfort. A defense expert, however, cast doubt upon the PTSD diagnosis and testified that Mrs. Addakai did not seem to put much effort into some of the tests he administered.

[¶ 10] The Addakais alleged six causes of action against the Witts: 1) negligent misrepresentation of a dangerous animal as gentle; 2) negligence for having failed to take proper precautions to protect Mrs. Addakai during her test ride; 3) strict liability for knowingly maintaining an animal with knowledge of its dangerous propensities; 4) conversion predicated upon the Witts' refusal to return the $500 down payment; 5) unjust enrichment by virtue of the retained down payment; and 6) negligent infliction of emotional distress for failure to use ordinary and reasonable care when inviting the Addakais to test ride Cindy Mist. Alleging that the Witts' actions were willful, wanton, reckless, and done with "callous disregard for the appellants' rights and safety," the Addakais also sought exemplary damages.

[¶ 11] The Witts set up defenses predicated on the Recreation Safety Act (Wyo. Stat. Ann. §§ 1–1–121 through –123 (Michie 1997)) and the so-called Wyoming Landowner Liability Act (Wyo. Stat. Ann. §§ 34–19–101 through –106 (LexisNexis 2001)). Initially, the district court gave partial summary judgment to the Witts on the negligence and strict liability counts. After enlisting the aid of an additional expert, however, the Addakais were permitted to amend their complaint, realleging negligence and adding a negligent infliction of emotional distress count with specific respect to Mr. Addakai, but dropping the strict liability allegations.

[¶ 12] Trial was had before a six-person jury from January 26 through 30, 1999. The Addakais had submitted jury instructions and a special verdict form during the period of time when their negligence claim had been temporarily eliminated by the district court's partial summary judgment. This omission created an awkward moment during the instructions conference, but was resolved when the Addakais agreed to allow the district court to reformulate the special verdict form.

[¶ 13] The jury found in favor of the Witts on all counts. From the judgment entered upon that verdict and the district court's refusal to grant a new trial, the Addakais timely prosecuted this appeal.

## STANDARD OF REVIEW

[¶ 14] It is the duty of the district court to provide instructions to a jury which clearly express the law in a manner sufficient to allow the jury to apply the correct law to the facts as they have determined them. *Baier v. State*, 891 P.2d 754, 756 (Wyo.1995). A shortfall in those instructions which either misleads or confuses the jury will presage an injustice to the parties and require remand for a new trial. *Martinez v. City of Cheyenne*, 791 P.2d 949, 960 (Wyo.1990).

[¶ 15] It does not follow, however, that this court will impress a *de novo* review of jury instructions as we do with most questions of law. Rather, it is incumbent upon the party alleging mistaken instructions to demonstrate error. *Vasquez By and Through Vasquez v. Wal–Mart Stores, Inc.*, 913 P.2d 441, 443 (Wyo.1996). Prejudicial error is never presumed. *McWilliams v. Wilhelm By and Through Wilhelm*, 893 P.2d 1147, 1148 (Wyo.1995). The party alleging error must show that the instructions had a tendency to confuse or mislead the jury before this court will consider reversal. *Bigley v. Craven*, 769 P.2d 892, 895 (Wyo.1989). Our review of allegedly errant jury instructions proceeds in light of the instructions as a whole rather than singling out particular instructions in a piecemeal fashion. *Ellison v. State*, 3 P.3d 845, 849 (Wyo.2000).

[¶ 16] Pursuant to W.R.C.P. 49, the submission of a particular form of special verdict is committed to the sound discretion of the trial court. *Turcq v. Shanahan*, 950 P.2d 47, 53 (Wyo.1997). It follows that reversal may only be predicated upon an abuse of that discretion. A party alleging error in a special verdict form must be vigilant. Failure to object to a special verdict form will not be considered on appeal if the complaining party failed to object or present their own alternative at trial. *Duffy v. Brown*, 708 P.2d 433, 439 (Wyo.1985).

## DISCUSSION

[¶ 17] The Addakais believe they were deprived of a fair trial by confusing and misleading jury instructions. Pointing to our holding in *Clarke v. Beckwith*, 858 P.2d 293,

296 (Wyo.1993), the Addakais assert that an occupier owes a duty to those who come upon the property to maintain those premises in a reasonably safe condition. They argue that when the Witts placed their horse trailer in proximity to Cindy Mist's corral, an inherently dangerous situation was created, setting the stage for Mrs. Addakai's injuries.

[¶ 18] In fact, the Addakais acknowledge that Instruction No. 39, as given to the jury by the trial court, properly expressed the duty of a landowner or occupier. The existence of such a duty was further buttressed by Instruction No. 37 which covered the duty of a possessor of land who invites the public onto that property for business purposes. However, the salutary effect of those instructions upon the Addakais' case was, according to their argument, negated by Instruction No. 36, which read as follows:

A possessor of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for recreational purposes.

[¶ 19] The Addakais agree that the foregoing instruction is an accurate statement of the Landowner Liability Act as expressed at Wyo. Stat. Ann. § 34–19–103 (LexisNexis 2001).[1] They argue, however, that confusion was engendered by the district court's failure to remind the jury that Wyo. Stat. Ann. § 34–19–106(a)(ii) (LexisNexis 2001) imposes a duty of ordinary care upon landowners, regardless of the aforementioned recreational use exception. Furthermore, the Addakais insist that "recreational purpose," as defined by § 34–19–101(a)(iii), specifically excludes equine activities from the liability exemption otherwise provided by the Landowner Liability Act.

[¶ 20] It is true that the Recreation Safety Act specifically addresses equine activities while the Landowner Liability Act does not. However, the definition of "recreational purpose" at § 34–19–101(a)(iii) is open-ended, employing the phraseology of "includ[ing], but ... not limited to" before described numerous activities not including equine activities. We cannot agree with the Addakais that this language evinces a legislative intent to exclude equine activities from the "recreational purpose" provisions of the Landowner Liability Act.

[¶ 21] When ruling upon the Addakais' motion for a new trial, the district court candidly agreed that there is tension between instructions given pursuant to the Landowner Liability Act and those given according to the Recreation Safety Act:

[T]his Court, I think, gave all but one of [the Addakais' proffered] instructions, and I think I gave most of the [Witts' proffered] instructions in this case, and when you read the general instructions on land owners' duties and possessors of land and then try to read together the specific statutes on horseback riding and land owner liability and recreation acts, they don't read well together....

[¶ 22] There can be no dispute that the Addakais and Witts were each entitled to have the jury instructed upon their respective theories of the case. *Rittierodt v. State Farm Ins. Co.*, 3 P.3d 841, 843 (Wyo.2000). That the parties were so entitled is not to say that the district court had license to utter confusing and contradictory instructions. However, an appellate court may not fix a myopic gaze upon one instruction to the exclusion of the others and the cumulative impact of the jury's charge. Some forty-odd instructions were given to the jury in this case, and we must consider that charge as a whole. *Betts v. Crawford*, 965 P.2d 680, 686 (Wyo.1998).

---

1. **§ 34–19–103. Limitations on landowner's liability.**
   (a) Except as specifically recognized by or provided in W.S. 34–19–105, an owner of land who either directly or indirectly invites or permits without charge any person to use the land for recreational purposes or a lessee of state lands does not thereby:
   (i) Extend any assurance that the premises are safe for any purpose;
   (ii) Confer upon the person using the land the legal status of an invitee or licensee to whom a duty of care is owed;
   (iii) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of the person using the land.

[¶ 23] It was the Addakais' theory of the case that Cindy Mist was in season (estrous), not used to a hackamore or bosal (as opposed to a snaffle bit), should have been ridden within the confines of her corral, and should not have been blocked from reentering that corral by a negligently placed horse trailer. We believe that the instructions, taken as a whole, impressed upon the Witts a duty of ordinary care with respect to the manner in which the horse was presented to the Addakais for their "test" ride. This can readily be perceived when reviewing Instruction No. 39:

> An occupier of premises must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk.

[¶ 24] A careful review of the entire charge given to the jury in this case leaves this court with the firm impression that "the charge present[ed] a comprehensive, balanced and fundamentally accurate statement of the governing law to the jury." *Betts v. Crawford*, 965 P.2d at 686 (quoting *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 832 (Wyo.1994)).

[¶ 25] Had it been the inclination of the jury to find in favor of the Addakais, it could have done so. We cannot say that the statement of the Landowner Liability Act at Instruction No. 36 made any greater impression upon the jury than the earlier instructions covering the Recreation Safety Act, including the admonition that one who engages in a sport or recreational activity, including equine activities, assumes the risk inherent in such activities.

[¶ 26] It is not insignificant that the issue of negligence was presented to a jury. Partial summary judgment had earlier been granted on that issue, but the district court eventually relented, indulging the Addakais by allowing them to present an amended complaint and designate an additional expert witness. In close cases we have expressed a preference for allowing jurors to decide just what is or is not a risk inherent to a particular recreational activity:

To say that inherent risks are assumed by sports participants "as a matter of law" is of little solace to [plaintiffs] when the question remains: what risks in a sport are inherent, obvious, or necessary to its participation, a question that ordinarily must be resolved by the jury.

*Halpern v. Wheeldon*, 890 P.2d 562, 566 (Wyo.1995) (quoting *Dillworth v. Gambardella*, 970 F.2d 1113, 1119 (2nd Cir.1992)). The district court allowed the jury to decide what risks inhere to horseback riding, and the jury made its decision.

[¶ 27] Counsel's affidavit submitted in support of the Addakais' motion for a new trial is also instructive with respect to the issue of the form of the special verdict. In that affidavit counsel indicates that it was not until he returned to his home in Evanston that he began to have concerns about the form of the special verdict. The trial had been held in Green River. This is an accurate reflection of the confusion engendered at the instructions conference by the lack of a special verdict form with respect to negligence. Counsel had, in fact, agreed to leave the precise language of the verdict form to the district court.

[¶ 28] Timely objection to a verdict considered to be inconsistent or irregular is essential to preservation of such an issue on appeal:

> [W]e do not think it harsh or unreasonable to require a litigant, when an opportunity is afforded during the trial, timely to bring a matter such as here to the attention of the trial court in order that it might be corrected, and failing in this that he shall not be heard here to complain.

*Crown Cork & Seal Co., Inc. v. Admiral Beverage Corp.*, 638 P.2d 1272, 1274 (Wyo. 1982) (quoting *DeWitty v. Decker*, 383 P.2d 734, 739–40 (Wyo.1963)). Not having properly preserved the issue below, the Addakais are foreclosed from raising the matter on appeal.

## CONCLUSION

[¶ 29] We are not unsympathetic to the travails of the Addakais. Such concerns can-

not, however, gainsay the full and fair opportunity which the Addakais enjoyed when they were able to present their case to a jury of their peers. If changes are to be made in the Landowner Liability Act, such activity is committed to the legislature. It was, however, the Recreation Safety Act which presaged an unfavorable verdict for the Addakais.

The district court is hereby affirmed in all respects.