BROTHERHOOD OF RAILROAD TRAINMEN, complainant,

*v.*

ANNA MAE VAN ETTEN, respondent.

*[Decided May 15th, 1919.]*

Appeal of George A. Case et al.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis, who filed the following opinion:

I advise a decree in favor of Anna Mae Van Etten. The suit was an interpleader suit, and the fund has been deposited in this court.

It appears from the evidence that Charles Case, a brother of Anna Mae Van Etten, held a benefit certificate in the Brotherhood of Railroad Trainmen. He was separated from his wife. They had two sons, George A. Case and Willard L. Case, both of whom were of age, and with one of whom the mother resided. Up to the 5th of February, 1917, Charles D. Case, the father, lived at No. 600 Newark street, Hoboken, New Jersey, in a rented room which he occupied for upwards of two years before

that time. His landlady testified that he was sick and only worked part of the time, and that he wanted to move to his sister's house where he could get fresh air, but he said he would return to her house and would take the downstairs room and look for some lady to take care of him. This witness says that he was very sick for four months; that during a part of that time he had to sleep on his chair, as he could not lie down in bed. She testified that he was a smart, intelligent man, but cranky; she took care of him when he was sick and cooked his meals every day. Finally, he asked his sister, Mrs. Van Etten, to take him to her home. She was a woman 'in humble circumstances, keeping a boarding-house. In the first place, the benefit certificate had been made payable to his wife; afterwards that arrangement was changed and it was made payable to his two sons; after he went to live with Mrs. Van Etten he had it changed again and made her the beneficiary, after consultation with a lawyer who was called in to advise in the matter. Mrs. Van Etten wanted the money payable under the benefit certificate paid to the one who should take care of him, but the lawyer advised that it should be made payable to her, and this was finally agreed upon. Under the policy Mr. Case was entitled to $1,600 in case of total disability, and the same amount in case of his death. He then made application to the brotherhood for the $1,600 on account of total disability, but died before that was acted upon. The doctor who attended Mr. Case during the time he lived with Mrs. Van Etten until his death, on March 31st, 1917, testified that the physical condition of Mr. Case was very bad, that he was suffering from endocarditis, and the muscle power of the heart had given out so that it was not doing its work properly; but he says that Mr. Case's mind was perfectly clear.

Mrs. Case, the widow, says that the reason they separated was that Mr. Case was drinking very heavily, and that they were dispossessed, as they owed upwards of four months' rent. She says that she consented to have the insurance transferred to the boys' names because her husband was always quarreling and fighting with her and saying he did not want any other man to

use up his money, and so she gave her consent and it was made payable to the sons.

Willard L. Case, one of the sons, testified that before his father went to the home of Mrs. Van Etten he told his father that he was perfectly willing that he should have it while he was living. The other brother did not testify.

The father having died, the sons now attack this transfer to Mrs. Van Etten on the ground that it was secured through fraud and undue influence.

This is not a case of a man who stripped himself by a deed of all his property. He retained, until the time of his death, six or seven weeks later, the right to change the beneficiary at any time.

I find no evidence of fraud or undue influence.

There is a presumption of undue influence where confidential relations exist, such as that of attorney and client, guardian and ward, &c., between parties to a gift *inter vivos*; probably, also, in case of a gift *causa mortis*, but not in the case of a testamentary gift; and I view this matter in the light of a testamentary disposition rather than a gift *inter vivos*.

It does not appear that free agency was interfered with or restricted, and there being found no undue influence or fraud, Mrs. Van Etten is entitled to a decree.

There is nothing to indicate that he was without mental strength, and it was natural for him to make his sister, who had taken him in to care for him for the rest of his days, his beneficiary. *Spark's Case, 63 N. J. Eq. 242, 248; Gleespin's Will, 26 N. J. Eq. 523; Trumbull v. Gibbons, 22 N. J. Law 117; White v. Starr, 47 N. J. Eq. 244; Stackhouse v. Horton, 15 N. J. Eq. 202; McCoon v. Allen, 45 N. J. Eq. 708; Gilham's Will, 64 N. J. Eq. 715; Schuchhardt v. Schuchhardt, 62 N. J. Eq. 710; In re Humphrey's Will, 26 N. J. Eq. 513; affirmed, 27 N. J. Eq. 567.*

*Mr. Harry W. Lange,* for the complainant.

*Mr. Hugh B. Reed,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Lewis.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.