**Gay L. LEIMBACH, Plaintiff–Appellee,**

v.

**Marsha S. ALLEN, Defendant–Appellant.**

**No. 91–3054.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 1, 1991.

Decided Oct. 6, 1992.

Melvin George Bergman, Lanham, Md., argued, for defendant-appellant.

Katherine Kelly Cawood, Cawood, Krain, Lotridge & Kelly, P.A., Annapolis, Md., argued (Timothy S. Smith, on brief), for plaintiff-appellee.

Before WIDENER and NIEMEYER, Circuit Judges, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Marsha S. Allen appeals from an order of the United States District Court for the District of Maryland entering judgment in favor of the plaintiff below, Gay L. Leimbach. We find that this Fed.R.Civ.P. 22 interpleader action is properly within the subject matter jurisdiction of the court, and that the district court did not err in finding that appellant Mrs. Allen exerted undue influence upon the decedent insured, thereby invalidating the decedent's change of beneficiaries on two life insurance policies. Accordingly, we affirm the judgment of the district court.

## I

The facts pertinent to this appeal are as follows.[1] On January 14, 1990, Harry R. (Dick) Leimbach, the husband of the plaintiff-appellee Gay L. Leimbach (Gay), died at George Washington University Medical Center in Washington, D.C., as the result of an inoperable spinal cord tumor. At the time of his death Dick was the insured under two life insurance policies that are the subject of the present litigation, one issued by the Metropolitan Life Insurance Company pursuant to the Federal Employees' Group Life Insurance Act (the FEGLI policy), and one issued by the New York Life Insurance Company (the New York Life policy). The FEGLI policy carried a death benefit of $129,000, while the New York Life policy, a decreasing term, mortgage protection policy, carried a benefit of $18,000 at the time of Dick's death.

Gay and Dick Leimbach were married in June, 1969. A daughter was born of the marriage, Calley P. Leimbach (Calley), age 13 at the time of the district court's decision. Shortly after his marriage, Dick made his wife, Gay, the beneficiary of the FEGLI policy. He likewise designated Gay as the primary beneficiary of the New York Life policy upon its issuance in 1978.

The Leimbachs' marriage apparently was a sound one from 1969 until 1988, when the record reveals a deterioration in the marital relationship. The district court found that from 1988 to August 23, 1989, Dick left the marital home on several occasions during which he stayed in the home of Marsha S. Allen, the defendant-appellant herein. In August 1989 Dick left the marital home and moved in with Mrs. Allen, with whom he maintained an intimate relationship for the remainder of his life. Soon thereafter Gay filed an action seeking a limited divorce in the Circuit Court for Anne Arundel County, Maryland.

The onset of the health problems that ultimately would claim Dick's life came during the same time as the breakup of his marriage. After experiencing symptoms during the spring and summer of 1989, Dick was admitted to George Washington University Medical Center on November 20, 1989. There, following a biopsy performed on November 22, Dick was diagnosed as having an inoperable spinal cord tumor near the brain. Dick thereafter remained hospitalized until his death on January 14, 1990.

During this time period, Mrs. Allen assumed an ever-greater role in Dick's affairs. On November 20, prior to entering the hospital, Dick executed a power of attorney granting Mrs. Allen the "authority to make those decisions that are normally reserved for the next of kin," and the "power of attorney to act for and on my behalf in all matters." On the same day Dick informed the medical staff by typed notice that Mrs. Allen was to be his "one point of contact with the outside world."

---

1. These facts are drawn largely from the district court's memorandum opinion, *Leimbach v. Al-* *len,* Civ. No. HM–90–854 (D.Md. Dec. 20, 1990).

The district court further found that, as Dick's medical condition worsened, so did Mrs. Allen's involvement in his affairs become more complete. By November 26, the hospital staff had been instructed to release medical information only to Mrs. Allen, and a sign was placed on the telephone in Dick's room stating that no calls were to be made without consulting Marsha Allen, "fiancee." Moreover, Mrs. Allen did not allow Mr. Leimbach and any member of his family to be alone with each other. Mrs. Allen was in Mr. Leimbach's hospital room whenever family members came to visit, with the exception of two or three isolated instances, over a 55–day period of hospitalization.

Quite significant with respect to the matters at hand is the role that Mrs. Allen played in Dick's personal legal affairs during his hospitalization. First, on November 25, with Mrs. Allen's assistance, Dick executed a will. After naming Mrs. Allen as executrix, trustee, and the primary beneficiary, the will made the following statement with regard to the insurance policies that are the subject of this case:

> FIFTH: It is my intent to change the beneficiary on all my life insurance policies to be placed in trust for CALLEY P. LEIMBACH after all outstanding bills have been paid. If I am unable to change the beneficiary of my life insurance policies prior to my death, I request that GAY LEIMBACH honor my request.

Next, Mrs. Allen was involved in the transactions that prompted the instant litigation, the change of beneficiaries on the two life insurance policies. On November 28, Dick changed the beneficiary designation on both the New York Life and FEGLI policies from his wife, Gay, to Mrs. Allen. As to the New York Life policy, the district court found that Mrs. Allen personally contacted an agent of the New York Life Insurance Company for the purpose of obtaining the forms necessary to effect the change in beneficiary. That agent testified that Mrs. Allen telephoned him to ask for the forms and explained that she was calling because Dick was having trouble speaking. Rather than mailing the necessary forms as Mrs. Allen had requested, the agent personally delivered them to Dick's hospital room and assisted in their execution. Mrs. Allen was present in the hospital room throughout this transaction.

As to the FEGLI policy, it appears from the record that Dick himself procured the necessary change of beneficiary forms by contacting Colonel Malachi Brown Jones, his former supervisor at Walter Reed Army Medical Center, where Dick had been employed prior to his illness. The district court found, however, that Mrs. Allen procured the witnesses necessary to complete the change of beneficiary form; assisted in filling out the majority of the form; had physical control of the form; and submitted the form to the proper Federal department the day after it was signed.

The final relevant factual findings of the district court which we mention concern Dick's physical and mental condition during his hospitalization. Dick was taking pain medication daily, up to and including November 28, the day the change of beneficiaries occurred. Further, hospital records indicate that Dick "remain[ed] weak" on that day.

Following Dick's death on January 14, 1990, both insurers received notices from both Gay and Mrs. Allen claiming rights to the death benefits under the policies. Faced with these conflicting claims, both insurers filed complaints in interpleader in the United States District Court for the District of Maryland making Gay Leimbach and Marsha Allen parties under Fed. R.Civ.P. 22.[2] After Gay and Mrs. Allen were brought into the suit, the insurers paid the disputed insurance proceeds into the registry of the court and then were dismissed from the case. Thereafter the case proceeded to trial before the district judge sitting without a jury.

After reciting the above-noted facts, among others, the district court, applying Maryland law, held that the disputed

---

2. Actually, New York Life intervened after Metropolitan had filed its case. No question as to this intervention is raised on appeal or was raised in the district court.

changes of beneficiaries were the product of undue influence exerted by Mrs. Allen and thus were ineffective. Accordingly, the court ordered the policy proceeds to be paid out of the registry of the court to Gay Leimbach. Mrs. Allen then moved the district court to alter or amend its judgment pursuant to Fed.R.Civ.P. 52(b) and 59(e), which motion was denied. This appeal followed.

## II

■ Though the issue was not raised in the district court, at oral argument before this court the question arose whether this case was properly within the subject matter jurisdiction of the district court and thus of this court on appeal, and we requested memoranda on the question. It is our duty to assure ourselves of our jurisdiction. See *Goldsmith v. Mayor & City Council of Baltimore*, 837 F.2d 158, 160 (4th Cir.1988).

Jurisdiction in this case is alleged under the general diversity statute, 28 U.S.C. § 1332. As Rule 22 and § 1332 have been construed, the diversity requirement is satisfied in a Rule interpleader case when each stakeholder is diverse from each claimant. See *Equitable Life Assurance Soc. of the United States v. Jones*, 679 F.2d 356, 358 n. 2 (4th Cir.1982). Assuming the proper citizenship of the parties and the requisite amount in controversy, jurisdiction exists in a Rule interpleader case if the interests of the parties are genuinely adverse so as to support the action under the terms of Rule 22(1).

■ While the district court made no explicit findings of jurisdictional fact, it appears to be undisputed that both insurers, who were the original plaintiffs and stakeholders, are citizens of New York for purposes of § 1332. It is also undisputed that both claimants Gay and Mrs. Allen are citizens of Maryland, and that the amount in controversy exceeds $50,000. At bottom, then, the jurisdictional questions raised here are whether, at the time the case was filed, the interest of the plaintiff insurers was sufficiently adverse to the defendant claimants' interests, and, if so,

whether the district court retained jurisdiction over the dispute between the nondiverse claimants after the stakeholder insurers were dismissed from the case.

In large measure the foregoing questions are controlled by this court's decision in *Equitable Life, supra. Equitable Life* involved a Rule interpleader suit brought by a New York life insurance company, Equitable Life, against two claimants, Melva Lee Jones (Melva) and Mary E. Jones (Mary). In dispute in the case was the ownership of the proceeds of a policy insuring the life of Alfred McClemen Jones (Alfred). Melva was Alfred's first wife and was the beneficiary of the disputed insurance policy throughout their marriage. Alfred and Melva were divorced in 1972. As part of a separation agreement that became part of their divorce decree, Alfred agreed to continue paying the premiums on the policies and to retain Melva as the primary beneficiary. Equitable Life was not made aware of this agreement.

In 1975, Alfred married Mary and, despite the requirement of his divorce decree, designated Mary as the beneficiary of the life insurance policies. When Alfred died, both Mary and Melva claimed rights to the proceeds of the policies, Mary by virtue of the beneficiary designation and Melva by the force of Alfred's obligation under the divorce decree. Equitable Life filed a Rule 22 interpleader complaint in the United States District Court for the District of Maryland naming Mary and Melva as defendant-claimants. The insurer paid the disputed proceeds into the registry of the court and, though apparently the insurer was not formally dismissed from the case, the remainder of the case consisted solely of the dispute between the claimants.

Though it appears that jurisdiction was not an issue in the district court, on appeal this court upheld its jurisdiction over the subject matter. See *Equitable Life*, 679 F.2d at 358 n. 2 ("Jurisdiction to entertain the interpleader action exists by reason of the diversity of citizenship between Equitable and the claimants with the amount in controversy in excess of $10,000, exclusive of interest and costs. 28 U.S.C. § 1332.").

The *Equitable Life* opinion does not contain an extended analysis of the point; however, it is apparent that jurisdiction was upheld on the theory that, at the moment of filing, the otherwise disinterested insurer had a substantial interest in having the complaint for interpleader granted, thereby avoiding the expense of further litigation and risk of multiple liability. See 679 F.2d at 358 n. 2. This holding is in accord with the decisions of those Courts of Appeals that have squarely considered the issue. *Aetna Life & Casualty Co. v. Spain*, 556 F.2d 747, 749 (5th Cir.1977); *Stewart Oil Co. v. Sohio Petroleum Co.*, 315 F.2d 759, 762 (7th Cir.), *cert. denied sub nom. Kline v. Stewart Oil Co.*, 375 U.S. 828, 84 S.Ct. 71, 11 L.Ed.2d 60 (1963). See also *Home Indemnity Co. v. Moore*, 499 F.2d 1202, 1205 (8th Cir.1974). Indeed, we are aware of no decision holding otherwise on these facts.

Thus, we are satisfied that, under the settled law of this circuit, the stakeholder insurers in this case had interests sufficiently adverse to those of the claimants so that the cause was properly within the diversity jurisdiction of the district court at the time of filing. A question that remains, however, is whether the dismissal of the insurers in this case had the effect of destroying the court's jurisdiction.

We know of no reason not to follow the standard rule in diversity cases that if jurisdiction is present when the case is filed, a change in citizenship will not destroy jurisdiction. We think the dismissal of the insurers in this case should have no greater effect, and the *Aetna Life & Casualty Co.* and *Stewart Oil* cases cited just above hold that the dismissal of the stakeholder before final judgment does not destroy jurisdiction, with which we agree. We note that *Federal Practice and Procedure*, Wright, Miller & Kane, Civil 2d, (1986), § 1710 is in agreement. We thus decide that the district court had jurisdiction of this interpleader action when filed and retained the same although the insurers were dismissed prior to final judgment.

III

On appeal Mrs. Allen contends that the district court erred in finding the disputed changes of beneficiaries to be ineffective as the product of undue influence. The court's conclusion that her conduct amounted to undue influence is a matter of fact which we disturb only if clearly erroneous. See *Schenck v. Going*, 237 F.2d 251, 252 (4th Cir.1956); *Koebig v. South Carolina Nat'l Bank of Charleston*, 217 F.2d 713, 715 (4th Cir.1954). Mrs. Allen also challenges the district court's application of the controlling Maryland law in formulating the standard by which Mrs. Allen's actions are to be measured. We review the district court's legal determinations *de novo*.

We examine first the claim that the district court incorrectly applied Maryland undue influence law. Not surprisingly, the Maryland courts have addressed the law of undue influence on many occasions in the past, and the standard appears to be well settled. When faced with a challenge to a transaction on undue influence grounds, a court first must characterize that transaction as either inter vivos or testamentary. This characterization is significant in that the allocation of the parties' respective burdens of proof turns on whether the transaction is inter vivos or in the nature of a testamentary disposition. See *Walton v. Davy*, 86 Md.App. 275, 586 A.2d 760, 767, *cert. denied*, 323 Md. 309, 593 A.2d 669 (1991). In all cases the burden of proving undue influence rests initially with the party seeking to set aside the transaction, which normally will be the plaintiff. *Walton*, 586 A.2d at 767. If the challenged transaction is testamentary, then the burden of proof remains with the plaintiff throughout the case.

However, if the transaction is determined to be inter vivos in nature, the plaintiff may shift to the defendant the burden of proving that no undue influence was exerted by proving that a confidential relationship existed between the defendant and the person who was the object of the defendant's coercive behavior. 586 A.2d at 767. Maryland case law provides guidance

to determining when a confidential relationship exists. See, e.g., *Tracey v. Tracey*, 160 Md. 306, 153 A. 80, 84–85 (1931).[3] In a testamentary case the presence of a confidential relationship is relevant, not for burden of proof purposes but as a factor to weigh in the ultimate determination as to whether undue influence in fact was exerted. *Moore v. Smith*, 321 Md. 347, 582 A.2d 1237, 1239 (1990).

◼ Once the foregoing burden of proof determinations are made, the court then must examine the specific conduct of the defendant in light of the factors that the Maryland case law identifies as indicative of undue influence. Perhaps the most comprehensive list of relevant factors is found in the recent case of *Moore v. Smith*, *supra*. In *Moore* the Maryland Court of Appeals stated:

> Although we have not laid down a test to determine the existence of undue influence with mathematical accuracy, we have recognized in many appellate cases several elements characteristic of its presence, including:
>
> 1. The benefactor and beneficiary are involved in a relationship of confidence and trust;
> 2. The will contains a substantial benefit to the beneficiary;
> 3. The beneficiary caused or assisted in effecting execution of [sic] will;
> 4. There was opportunity to exert influence;
> 5. The will contains an unnatural disposition;
> 6. The bequests constitute a change from a former will; and
> 7. The testator was highly susceptible to the undue influence.

*Moore*, 582 A.2d at 1239.

In the instant case the district court found that the change of beneficiaries of the life insurance policies was in the nature of a testamentary disposition, as the change would not become irrevocable or take effect until Dick's death. Accordingly

the burden of proof never shifted away from plaintiff Gay. Neither party disputes this holding on appeal. Thus, the only matters in dispute are the district court's formulation of the undue influence standard and whether such influence occurred.

Mrs. Allen argues that the district court erred in relying on the case of *Tracey v. Tracey, supra*, a case involving a challenge to an inter vivos deed, as its primary source of Maryland's undue influence analysis. We find this argument to be without merit, as a reading of the *Tracey* and *Moore* opinions reveals that undue influence law in Maryland has remained essentially constant throughout most of this century. The *Tracey* court identified as relevant to an undue influence determination the following factors: 1) the presence or absence of a confidential relationship between benefactor and beneficiary; 2) whether the disposition of property in a given case differs from what might "ordinarily be looked for" given the benefactor's situation; 3) whether there is "a manifest and substantial conflict between the deed or testament under consideration and the settled purpose of the donor"; 4) the existence of "previous declarations of the donor inconsistent with the results accomplished by the will or deed"; 5) the existence of "a marked activity and interest by the beneficiaries in bringing about the execution of an instrument by which they profit"; and 6) "in some cases the absence of independent advice from disinterested sources or a reasonable opportunity to secure it." *Tracey*, 153 A. at 84–86.

Clearly, Maryland's undue influence analysis was substantially the same in 1931 as it was at the time of the *Moore* decision and of the district court's decision in 1990. Moreover, that the *Tracey* case involved an inter vivos transaction is irrelevant, as the distinction between inter vivos and testamentary transactions is pertinent only to the burden of proof question. As we have noted, the burden of proof issue was decid-

---

**3.** The district court found that a confidential relationship existed between Dick and Mrs. Allen. In her brief before this court Mrs. Allen concedes the existence of a confidential rela-

tionship, see Brief of Appellant at 15; thus we need not discuss further the characteristics necessary to constitute such a relationship.

ed in Mrs. Allen's favor at trial and is not challenged on appeal. Thus, we are satisfied that the district court did not err in that respect.

■ Mrs. Allen further argues that the district court erred in finding as a matter of fact that her conduct amounted to undue influence under the standard set out in *Moore* and *Tracey.* We disagree. We find the district court's conclusions to be amply supported by the record as a whole, and in no way can we say that those conclusions are clearly erroneous.

We have already set out many of those factual findings that the district court found to constitute undue influence, see part I, *supra,* and we will not now engage in a line-by-line review of those findings. We think it sufficient to note that the facts adduced at trial support each of the seven factors identified in the *Moore* case as indicators of the exertion of undue influence. Taken as a whole, the facts here convincingly establish that Mrs. Allen's actions succeeded in destroying Dick Leimbach's "free agency," *Moore,* 582 A.2d at 1239; thus the attempted changes must fail.

Particularly persuasive is the timing of the changes in life insurance beneficiaries, which came only three days after Dick executed his last will and testament. In that will Dick expressed his desire to change the beneficiaries of the policies so that the proceeds would be held in trust for his daughter, Calley. He further stated that if he were unable to so change the beneficiaries before his death, then it was his desire that *his wife,* Gay, honor his request that the proceeds be held for the benefit of Calley. Certainly this stated desire is inconsistent with the unqualified designation of Marsha Allen as beneficiary three days later. We are of opinion that this is precisely the type of change that Maryland's undue influence law seeks to prevent.

## IV

In sum, we find that this case was properly within the diversity jurisdiction of the district court and that the court committed no error.

The judgment of the district court is accordingly

AFFIRMED.