# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 116

OCTOBER TERM, A.D. 2016

December 5, 2016

SPENCER D. WILLEY,

Appellant
(Plaintiff),

v.

BERTHA I. WILLEY, ALLEN F.
WILLEY, individually, and FIRST
FEDERAL SAVINGS BANK OF
SHERIDAN, WYOMING as Trustee of
the Allen F. Willey Revocable Trust Dated
September 12, 2001, As Amended And
Restated On November 4, 2010,

Appellees
(Defendants).

S-16-0041

SPENCER D. WILLEY,

Appellant
(Plaintiff),

v.

BERTHA I. WILLEY, ALLEN F.
WILLEY, individually, and FIRST
FEDERAL SAVINGS BANK OF
SHERIDAN, WYOMING as Trustee of
the Allen F. Willey Revocable Trust Dated
September 12, 2001, As Amended And
Restated On November 4, 2010,

Appellees
(Defendants).

S-16-0042

*Appeal from the District Court of Sheridan County*
The Honorable John G. Fenn, Judge

*Representing Appellant:*
Steve C.M. Aron and Galen B. Woelk of Aron & Hennig, LLP, Laramie, Wyoming. Argument by Mr. Aron.

*Representing Appellees Willey:*
Debra J. Wendtland of Wendtland & Wendtland, LLP, Sheridan, Wyoming.

*Representing Appellee First Federal Savings Bank of Sheridan:*
Amanda K. Roberts and Mistee Lyn Elliott of Lonabaugh & Riggs, LLP, Sheridan, Wyoming.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ**, Justice.

[¶1]     The appellant, Spencer D. Willey, brought a complaint for declaratory judgment and a permanent injunction against the appellees, his father, Allen F. Willey; his father's wife, Bertha I. Willey; and First Federal Savings Bank of Sheridan, Wyoming, as trustee of the Allen F. Willey Revocable Trust (hereinafter First Federal).  Spencer[1] sought to prevent the appellees from selling the Willey Ranch, which was held in the trust, by alleging that selling the ranch amounted to a breach of contract.  Spencer further alleged that Bertha exerted undue influence over Allen to convince him to sell the ranch and to amend the trust provisions in such a way that it completely removed Spencer from the trust and gave more benefit to Bertha and her children.  The district court granted summary judgment in favor of the appellees with respect to the breach of contract claim, but determined issues of material fact existed in the undue influence claims.  After a five day trial, a jury determined that Bertha did not exercise undue influence over Allen or his decisions regarding the Willey Ranch or his trust.  Spencer now appeals the district court's summary judgment decision and several aspects of the trial.  We affirm.

## ISSUES

[¶2]     We have restated the issues presented by the parties:

    1.    Whether the district court properly instructed the jury regarding the elements of undue influence.

    2.   Whether the special verdict form confused the jury or failed to allow the jury to properly consider all of Spencer's claims.

    3.    Whether the district court's judgment improperly deprives Spencer's children, who were not parties to this proceeding, their right to access the courts in the future should they decide to challenge the Allen F. Willey Revocable Trust.

    4.    Whether the district court erred when it allowed the successor trustee, First Federal, to participate at trial when Spencer challenged the trust amendment that appointed it as successor trustee.

    5.    Whether the district court erroneously granted summary judgment in favor of the appellees on the breach of contract claim when it determined that there were no material facts in dispute.

---

[1] In order to avoid confusion regarding the parties and other individuals involved in this case, we will refer to the members of the Willey family by their first names.

1

6. Whether the district court erred when it denied Spencer's motion for a new trial under Wyoming Rule of Civil Procedure 59.

**FACTS**

[¶3]   Spencer Willey is the only surviving child of Allen Willey.  Spencer grew up on the Willey Ranch near Sheridan with his parents.  Allen's parents (Spencer's grandparents), Ralph and Barbara Willey, also lived on the ranch.  Spencer testified that it was always his intention to follow in the footsteps of his grandfather and father and run the Willey Ranch.  He also stated that Ralph, Allen and Spencer all assumed Spencer would eventually run the ranch on his own.  In 2001, Allen executed the Allen F. Willey Trust Agreement and Declaration of Trust (hereinafter the trust), which included the Willey Ranch as a trust asset.  This was a revocable lifetime trust which provided for management of Allen's assets during his lifetime, and for distribution of the trust assets upon his death.  As will be more thoroughly discussed below, the trust initially named Spencer as the successor trustee and ultimately benefitted Spencer's children, E.W. and A.W.  However, over time, Allen amended the trust and eventually removed Spencer from the trust provisions altogether.  We will now review the relevant trust provisions and amendments Allen made to the trust.

[¶4]   On September 12, 2001, Allen executed the trust and served as trustee.  Of relevance to this appeal, Allen provided that his son, Spencer, would serve as successor trustee, and if Spencer was unable to serve, then Spencer's wife, Stephanie Willey, would act as successor trustee.  Further, Spencer's son, E.W., and his daughter, A.W.,[2] would become co-trustees with their parents when they reached the age of twenty-one.  The trust also provided that the trust assets would continue to be held in the trust for the combined lifetime of Spencer and Stephanie or until E.W. reached the age of fifty, whichever were to occur last.  However, during that time, all of the income from the trust was to be distributed to Spencer and Stephanie until E.W. turned thirty.  Thereafter, Spencer and Stephanie would receive half of the income, and their children would equally share the other half of the income.  The trust provided Bertha Ligocki (who would later marry Allen and become Bertha Willey) a life estate in the house in which Bertha and Allen mutually resided.

[¶5]   On July 10, 2006, Allen executed the First Amendment to the trust.  In the amendment, Allen provided a life estate in another home on the ranch, the Mead Creek ranch house, to Bertha's daughter and granddaughter, Susan Williams and Brittany Phillips.[3]  Further, Allen removed Stephanie as a successor trustee of the trust.  On March

---

[2] A.W. had not been born when the trust was originally executed.  However, the trust provisions clearly provided that any additional children born to Spencer and Stephanie would be included in the trust.

[3] The Mead Creek ranch house was Ralph and Barbara's home.  After they died, Allen asked Susan to move into the home so it was not vacant.

16, 2009, Allen executed the Second Amendment to the trust and provided that Susan Williams would serve as successor trustee if Spencer was unable or unwilling to serve.

[¶6]    On November 4, 2010, Allen signed the Allen F. Willey Amended and Restated Declaration of Trust which made additional changes to the original trust.  Of most significance, the amended and restated trust omitted Spencer and Stephanie as beneficiaries.  It no longer provided that Spencer, E.W., or A.W. would serve as successor trustees.  Instead, the trust provided that Allen's accountant, Annette Rinaldo, would serve as successor trustee.  In the event Ms. Rinaldo would not or could not serve, the Sheridan County District Court was tasked to appoint a successor trustee.  The trust also specified that none of Allen's descendants could be appointed as trustee.  Further, the trust provided that the trustee distribute the annual mineral income to Bertha, and then after her death to her daughters, Susan and Leslie, and then to E.W. and A.W.  Additionally, Bertha was to receive the balance of the trust assets for her lifetime, and to E.W. and A.W. thereafter.  The new trust also stated that once Allen was no longer able to operate the Willey Ranch, he preferred that the ranch be leased to Rob Gorzalka.  If Mr. Gorzalka chose not to lease the ranch, or the trustee otherwise determined leasing to Mr. Gorzalka was detrimental to the ranch assets, the trustee could lease the ranch to a third party.  However, the trustee was prohibited from directly or indirectly leasing the ranch to Spencer.

[¶7]    On April 4, 2011, Allen amended the Amended and Restated Trust by removing the preference that the ranch be leased to Mr. Gorzalka.  On October 13, 2011, Allen again amended the Amended and Restated Trust by increasing the beneficial interests of Bertha, Susan and Leslie.

[¶8]    On March 4, 2014, Allen amended the Amended and Restated Trust a third time.  The trust now provided that Bertha receive a $200,000 distribution upon Allen's death.  Allen also added Bertha's son, Martin Martinez, as a partial beneficiary. Further, the amendment added a confidentiality provision which prohibited the trustee from disclosing to E.W. and A.W. the terms and provisions of the trust.  Finally, the amendment changed the successor trustee to First Interstate Bank of Sheridan and mandated that under no circumstances should Spencer or any lineal descendant of Ralph and Barbara Willey be named Trustee.

[¶9]    Allen executed a final amendment to the trust on November 3, 2014.  In that amendment, Allen designated First Federal as the successor trustee if First Interstate Bank was unwilling to serve as trustee.

[¶10] Prior to executing the 2014 amendments to the restated trust, Allen listed the Willey Ranch for sale on October 8, 2013.  On May 14, 2014, Spencer filed a Complaint for Injunction and Declaratory Judgment against Allen, individually and as trustee of the Allen F. Willey trust, and Bertha, individually, to set aside the real estate listing of the

Willey Ranch and requested that Allen be removed as trustee of the trust due to incapacity. Spencer requested that Allen be removed as trustee because in 2012 Allen was diagnosed with frontal temporal dementia after seeking medical help with memory loss and speech difficulties. In the Complaint, Spencer also alleged that Allen's wife, Bertha, exercised undue influence over Allen's weakened physical and mental state to convince him to sell the ranch instead of leaving it in the trust for the benefit of E.W. and A.W.

[¶11] On May 4, 2015, Spencer amended the Complaint and added an allegation that Bertha also exercised undue influence over Allen by convincing him to amend the trust in such a way that it removed Spencer from the trust, reduced the benefits E.W. and A.W. would receive from the trust, and gave Bertha more benefits from the trust.[4] Approximately one month after the Amended Complaint was filed, Allen died. Two months later, the parties tried the case before a jury, and the jury concluded that Bertha did not exercise undue influence over Allen when he executed the 2010 amendment and restatement of the Trust. Spencer filed a motion for new trial, which the district court denied. Spencer filed a timely notice of appeal of the trial judgment and the order denying the motion for new trial.

[¶12] Other facts will be discussed as they become relevant in the analysis of the issues below.

## DISCUSSION

### 1. Burden of Proving Undue Influence

[¶13] Spencer argues the district court improperly instructed the jury regarding which party has the burden of proving or disproving the existence of undue influence. The first issue that must be resolved is the standard of review this Court will utilize in reviewing this claim. It is not clear whether Spencer is advocating that this Court review the issue using a *de novo* or abuse of discretion standard, although his argument as a whole seems to proceed as if the *de novo* standard applies. The appellees argue that Spencer failed to preserve this issue for appeal because he did not object to the undue influence elements instruction at the formal jury instruction conference as required by Wyoming Rule of Civil Procedure 51(b). Consequently, appellees assert that our consideration of this issue is conducted using a plain error analysis.

[¶14] The disagreement between the parties regarding the burden of proving or disproving undue influence arose long before the jury instruction conference at trial. In

---

[4] On October 7, 2014, Allen resigned as trustee of the Allen F. Willey Trust. First Interstate Bank declined to act as successor trustee. Thereafter, First Federal accepted its appointment as successor trustee and it was added as a named defendant in the Amended Complaint.

4

his brief opposing the appellees' motion for summary judgment, Spencer argued that, while he initially has the burden of proof, once he establishes a dependent or confidential relationship between Bertha and Allen, the burden shifts to Bertha to establish by clear and convincing proof that Allen's decisions to amend the trust and sell the ranch took place with fairness and in good faith. The appellees, however, took the position that Spencer had the burden of proving each element of undue influence. In an effort to clarify what the appropriate elements are and the burden of proof in proving the existence of undue influence in a testamentary trust, the appellees filed a motion requesting that the district court rule on the applicable standard. The district court rejected Spencer's argument and concluded the burden always rested with Spencer to show that Bertha exercised undue influence over Allen.

[¶15] The trial transcripts reveal that, in an apparent attempt to preserve the record for appeal, Spencer submitted proposed jury instructions which would have instructed the jury that the burden of proof shifts to Bertha once a confidential relationship is established. The district court rejected those proposed instructions. The transcripts also reveal that Spencer did not object to the instruction the jury received regarding the elements of undue influence.

[¶16] W.R.C.P. 51(b) states:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. . . . No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

"The purpose of requiring an objection under W.R.C.P. 51 is to inform the district court of the nature of the contended error and the specific grounds of objection so that the district court may exercise judicial discretion in reconsidering the instruction to avoid error." *Rittierodt v. State Farm Ins. Co.*, 3 P.3d 841, 843 (Wyo. 2000).

[¶17] While Spencer did not lodge a specific objection to the undue influence elements instruction, he certainly made the district court aware on more than one occasion that he believed the burden shifted to Bertha once a confidential relationship was established. The district court considered Spencer's position on the matter and ultimately disagreed with him. The district court certainly had the opportunity to consider whether a burden shifting instruction would have been appropriate in this case and, therefore, the

5

requirements of Rule 51(b) have been satisfied and the issue is properly before this Court on appeal. *See id*.

[¶18]

> "The legal sufficiency of jury instructions is reviewed *de novo*, with this Court asking first whether an instruction is erroneous, and second whether the error prejudiced a party. Prejudice is not presumed and the burden is on the appellant to demonstrate it. The district court has extensive discretion in tailoring jury instructions, so long as they correctly state the law and fairly and adequately cover the issues presented. Accordingly, our review of a district court's decision to give or refuse a particular jury instruction is for an abuse of discretion."

*Merit Energy Co., LLC v. Horr*, 2016 WY 3, ¶ 23, 366 P.3d 489, 497 (Wyo. 2016), citing *Pina v. Christensen*, 2009 WY 64, 206 P.3d 1298, 1299-1300 (Wyo. 2009). Because the challenge here is to the district court's determination that the burden of proof did not shift, and to the legal accuracy of the subsequent jury instruction about that issue, we apply a *de novo* standard of review.

[¶19] Spencer continues to maintain that the burden of proof should have shifted to Bertha to prove undue influence did not exist. In support of this position he relies on *Bergren v. Berggren*, 77 Wyo. 438, 317 P.2d 1101 (1957) and *Perry v. Vaught*, 624 P.2d 776 (Wyo. 1981). In both of those cases, the Court explained that courts will zealously scrutinize transactions between parties who are in a confidential relationship. *Perry*, 624 P.2d at 783; *see also Bergren*, 317 P.2d at 455. Part of that scrutiny is requiring "the recipient of the property to establish that the transaction was fair and conducted in good faith." *Perry*, 624 P.2d at 783; *Bergren*, 317 P.2d at 455. It is important to recognize, however, that neither of the situations in *Perry* or *Bergren* dealt with a revocable trust. Instead, both of those cases involved the *inter vivos* transfer of a deed. *Perry*, 624 P.2d at 777; *Bergren*, 317 P.2d at 444, 455 ("The rules as to the validity of gifts between parties in a fiduciary relation are applied with greater strictness to a gift inter vivos, by which a donor parts with something for which he still has some use, than to a gift by a will.").

[¶20] When it comes to proving undue influence in the creation of a testamentary document, this Court has consistently stated that the party claiming a will or trust was the product of undue influence has the burden of proving each of the elements. *See Meyer v. Miller*, 2014 WY 91, ¶ 21, 330 P.3d 263, 269 (Wyo. 2014) ("Appellant therefore bore the burden of proving undue influence by presenting evidence clearly demonstrating that Mrs. Carlsen's free agency was destroyed and that her volition was replaced by that of her other daughters."); *Kelly v. McNeel*, 2011 WY 79, ¶ 18, 250 P.3d 1105, 1110 (Wyo.

6

2011) ("The party contesting a will bears the burden of proving undue influence by presenting evidence clearly demonstrating that the testator's free agency was destroyed and his volition was substituted for that of another."); *Kibbee v. First Interstate Bank*, 2010 WY 143, ¶ 45, 242 P.3d 973, 988 (Wyo. 2010) ("To prevail on an undue influence claim, the plaintiff must establish all four of the above-outlined elements."); *Melcher v. Benson (In re Estate of McLean)*, 2004 WY 126, ¶ 11, 99 P.3d 999, 1004 (Wyo. 2004) ("The will contestant bears the burden of proving undue influence by presenting evidence clearly demonstrating that the testator's free agency was destroyed and that his volition was substituted for that of another."); *Mercado v. Trujillo*, 980 P.2d 824, 826 (Wyo. 1999) ("The burden of proving undue influence rests upon the contestant to provide clear proof that the decedent's free agency was destroyed, and the volition of another was substituted for theirs.").

[¶21] Additionally, in *Marchant v. Cook*, 967 P.2d 551 (Wyo. 1998), the Court discussed the elements of undue influence in an *inter vivos* transaction versus undue influence in testamentary dispositions. *Id*. at 557-58. The Court acknowledged that in an *inter vivos* transaction, if the grantor and grantee are in a confidential relationship, the burden of proof shifts to the grantee to prove that the transaction was fair and conducted in good faith. *Id*. at 557. However, *Marchant* did not recognize burden shifting in testamentary dispositions. *Id*. at 557-58.

[¶22] Wyoming is not alone in distinguishing between *inter vivos* gifts and testamentary dispositions. *See Roberts-Douglas v. Meares*, 624 A.2d 405, 419 (D.C. 1992); *Leimbach v. Allen*, 976 F.2d 912, 917-18 (4th Cir. 1992); *White v. White*, 655 P.2d 1173, 1176-77 (Wash. Ct. App. 1982); *Brotherhood of Railroad Trainmen v. Van Etten*, 110 A. 121, 122 (N.J. 1919); *Graham v. Courtright*, 161 N.W. 774, 778 (Iowa 1917); *Ginter v. Ginter*, 101 P. 634 (Kan. 1909); *Hutcheson v. Bibb*, 38 So. 754, 754 (Ala. 1904). In *Leimbach* the United States Court of Appeals for the Fourth Circuit clearly summarized Maryland law on this issue, which mirrors the law in Wyoming. *Leimbach*, 976 F.2d at 917-18. First, the courts must determine whether a transaction is *inter vivos* or testamentary. *Id*. at 917. If the transaction is testamentary, the burden remains with the party challenging the transaction throughout the entirety of the case. *Id*. However, if the transaction is *inter vivos*, the burden will shift to the party defending the transaction if a confidential relationship between the grantor and grantee is established. *Id*. The court correctly pointed out that, while the burden does not shift if a confidential relationship is established in a testamentary transaction, the evidence is still relevant "as a factor to weigh in the ultimate determination as to whether undue influence in fact was exerted." *Id*. at 918.

[¶23] The greater protection afforded to *inter vivos* gifts over testamentary transactions in an undue influence situation makes sense when one considers what the grantor is parting with in each transaction:

7

The theory as to contracts and gifts inter vivos is that a person having need of property, or at least a desire to retain it during life, is not likely to part with it without a measurably adequate equivalent. When it appears to have been given away or parted with for an inadequate consideration to one in a dominating position in relation to the donor or grantor, the presumption arises that the latter has not freely parted therewith and its enjoyment, but that his act was induced by the undue exercise of the influence which the beneficiary may have had over him; and this presumption must be met by the grantee or donee and rebutted, else, in equity, it becomes as a fact proven – a vitiating factor in the transaction. But the primary presumption on which this whole doctrine rests is entirely lacking in testamentary dispositions. The natural inference that the owner is adverse to parting with his property in the case of gifts and contracts inter vivos is reversed in the disposition of property by will. The design of the testator, as manifested therein, is to give away a part or all he has or may thereafter acquire. He does not undertake to part with its use or enjoyment, for the will speaks only from the time of his death, and therefor its use and enjoyment by him is not interrupted. There cannot be an assumption that the testator would not part with his property, for in the nature of things that is the object of his testament, and the property necessarily must pass to others upon his death.

*Graham*, 161 N.W. at 777-78. Further, the grantee of an *inter vivos* gift is generally a party to the transaction, whereas a beneficiary of a will or trust is not and may have no knowledge of the benefit of the will or trust until many years later. *Id*. at 778.

[¶24] Here, there is no dispute that Allen's trust provides testamentary disposition of his property. The district court properly concluded that the burden to demonstrate undue influence always remained with Spencer and, therefore, any jury instructions stating otherwise would be erroneous. Because the instructions properly stated the elements of undue influence and properly allocated the burden of proof, the district court did not err when it declined to submit Spencer's proposed instructions regarding confidential relationships and burden shifting to the jury.

## 2. *Special Verdict Form*

[¶25] During deliberations, the district court required the jury to consider one question: "Was Allen Willey unduly influenced by the Defendant, Bertha Willey, when he created and executed The Amended and Restated Declaration of Trust on November 4, 2010

8

(Trial Exhibit 1004)?" In determining the structure of the special verdict form, the district court received a proposed form from each of the parties. Spencer proposed that the jury continue to consider all amendments made to the trust after 2010 if it found that Allen was not unduly influenced by Bertha in 2010. However, if there was undue influence in 2010, the jury's inquiry should end. The appellees proposed verdict form was the opposite, providing that the jury stop further inquiry if it found that Allen was not unduly influenced by Bertha in 2010. Appellees' proposal was for the jury to only consider the other amendments if it did find undue influence in 2010.

[¶26] Ultimately, the district court agreed with appellees' position. It ruled that because the 2010 amendment and restatement entirely removed Spencer as a beneficiary and a successor trustee, a decision on its validity determined all the issues in the case. If the jury found no undue influence on the 2010 amendment, Spencer had no further interest in the trust. On the other hand, if the 2010 changes were the result of undue influence, the 2010 changes and all subsequent amendments were invalid. The jury found no such undue influence. On appeal, Spencer argues the special verdict form prevented the jury from considering whether the four most critical trust amendments were the result of undue influence, was confusing and misleading, and resulted in a *sua sponte* dismissal of Spencer's claims.

[¶27] The submission of a particular form of a special verdict is within the sound discretion of the trial court. *Addakai v. Witt*, 2001 WY 85, ¶ 16, 31 P.3d 70, 73 (Wyo. 2001). Therefore, we will reverse only if we find the trial court abused its discretion in submitting the special verdict form to the jury. *Id*. However, we have additionally recognized that "[a] party alleging error in a special verdict form must be vigilant." *Id*. An alleged error in a special verdict form will not be considered on appeal if the complaining party failed to object or present an alternative form at trial. *Id*. (citing *Duffy v. Brown*, 708 P.2d 433, 439 (Wyo. 1985)).

[¶28] While Spencer submitted a proposed verdict form that would have required the jury to continue to deliberate regarding undue influence in the trust amendments made after 2010, Spencer never raised any of the issues he presents on appeal to the district court. Instead, it appears Spencer's primary suggestion at trial was that there was no harm in having the jury render a decision regarding the later amendments in the event E.W. and A.W. decide to challenge the trust at some point in the future. Spencer's counsel essentially represented the jury's role would be "advisory" in that matter. Despite the district court giving him the opportunity to do so, Spencer did not argue that the special verdict form prevented the jury from considering critical evidence, was confusing and misleading, or that it operated as a *sua sponte* dismissal of his claims. Consequently, we decline to consider this issue for the first time on appeal. *See Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004) ("This court has taken a dim view of a litigant trying a case on one theory and appealing it on another. . . . Parties are bound by the theories they advanced below.")

9

### 3. Future Claims by E.W. and A.W.

[¶29]   Spencer's next argument is not entirely clear.  We have interpreted it to be that the district court erred in entering judgment against him because it may have a *res judicata* or collateral estoppel effect against E.W. and A.W. if they ever choose to challenge the trust in the future.  However, he seems to also argue that *res judicata* and/or collateral estoppel should not apply to any claims brought by the children.  The argument is further complicated by the fact that at trial, Spencer advocated for the jury to provide an advisory verdict on the post 2010 amendments in case the children decided to challenge the trust in the future.

[¶30]   We decline to consider this issue.  It is vague and undefined and, to the extent we can decipher the argument, it is not supported by any cogent argument or authority.  *Hamburg v. Heilbrun*, 889 P.2d 967, 968 (Wyo. 1995) ("We need not consider issues which are not supported by proper citation of authority and cogent argument or which are not clearly defined.")  Spencer has not explained why the children's potential claims that may or may not be brought in the future are relevant to any decision in this case.  The children are not parties to this case and, therefore, their interests need not be considered here.

### 4. First Federal as Successor Trustee

[¶31]   Spencer next claims that First Federal should not have been allowed to participate in the trial as the successor trustee because Spencer was challenging the trust document that appointed First Federal as successor trustee.  He raised this issue immediately before trial began when he requested sanctions against Bertha's attorney for disclosing in an untimely fashion the amendment that named First Federal as successor trustee.  The district court determined that the trust and its amendments are effective until it is proved that they are not.  Therefore, at that point in time First Federal was the legal successor trustee and could participate at trial.

[¶32]   While Spencer did previously raise this issue, we decline to address it because Spencer has not cited to a single legal authority to support his position.  *Hamburg*, 889 P.2d at 968.  As pointed out by the appellees, a trustee has the power and obligation to defend and protect trust property in any action, claim, or judicial proceeding.  *See Shriners Hospitals for Children v. First Northern Bank of Wyoming*, 2016 WY 51, ¶ 57, 373 P.3d 392, 409 (Wyo. 2016); Wyo. Stat. Ann. § 4-10-816(a)(xxiv) (LexisNexis 2015).  Without an even arguably good faith attempt to convince this Court why First Federal should be prohibited from carrying out its duties and obligations simply because the trust provisions have been challenged, we refuse to consider Spencer's claim.

### 5. Summary Judgment on Breach of Contract Claim

[¶33] In the Amended Complaint, Spencer alleged that there was an oral agreement between Ralph, Allen and Spencer that Spencer would inherit the Willey Ranch. The appellees moved for summary judgment on the basis that a valid oral contract did not exist because there were no clear and definite terms, Spencer did not give any consideration in exchange for the promise of the ranch, and that the statute of frauds prohibits oral contracts regarding real estate. The appellees further alleged that Spencer could not demonstrate partial performance or promissory estoppel to avoid the statute of frauds. The district court granted summary judgment, finding simply that no material issues of fact existed with regard to this claim. Spencer argues that material issues of fact do exist and, therefore, the district court's decision was erroneous.

[¶34] When reviewing an order granting summary judgment, we employ the same standards and use the same materials presented to the district court. *Symons v. Heaton*, 2014 WY 4, ¶ 7, 316 P.3d 1171, 1173 (Wyo. 2014).

> Wyo. R. Civ. P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law de novo without giving any deference to the district court's determinations.

*Id*. (quoting *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 586 (Wyo. 2005)). "A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense." *Parkhurst v. Boykin*, 2004 WY 90, ¶ 13, 94 P.3d 450, 457 (Wyo. 2004).

[¶35] After reviewing the materials the parties submitted at the summary judgment stage, we find that there are no material facts in dispute regarding the breach of contract claim and the district court properly granted summary judgment in favor of appellees. A party to an oral contract is still required to show the three basic elements of any contract: offer, acceptance, and consideration. *Id.*, ¶ 18, at 459. We question whether the materials submitted by Spencer show any of the elements of a contract. In his deposition, Spencer testified that the ranch was "always supposed to be mine some day. My grandfather [Ralph] wanted it that way." He also stated that he was with Ralph and Allen when the two discussed "how things were going to be left." However, Spencer never provided any more specificity regarding the agreement that was made or the conditions

11

upon which Spencer accepted that agreement.  Spencer provided the affidavits of people who stated it was common knowledge that Allen had always intended for Spencer and his children to inherit the Willey Ranch, but none of those affidavits provided any specificity of an agreement.

[¶36]  Even giving Spencer the benefit of the doubt that his deposition testimony and the affidavits raise a material issue of fact with regard to the elements of offer and acceptance, Spencer has not provided any evidence that could even arguably raise a material issue of fact regarding the element of consideration.  "Contractual consideration is defined as 'a benefit to the promisor or a detriment to the promisee.'"  *Hall v. Perry*, 2009 WY 83, ¶ 9, 211 P.3d 489, 493 (Wyo. 2009).  There are no facts that suggest Spencer, as the promisee, actually gave up anything in exchange for the promise of receiving the Willey Ranch.  In his deposition, Spencer was asked what he had to do in exchange for receiving the ranch:

> Q      Now, was there anything you had to do in exchange for receiving the ranch?
> A      No.
> Q      Nothing?
> A      Not that I could pinpoint.  I mean -- no, there was never any made, you do this and it's yours.  It was, this is -- you've been here your whole life.  Your dad's been here your whole life.  It's been us three.
>       This is just the way it's going to be.  It's going to be yours – it's mine.  It's going to be Allen's, and then it's going to be Spencer's.  And then it's going to be Spencer's kids, and from there --

Spencer testified that he was "shamed" into not pursuing other careers to work at the ranch, although Ralph told him he could decide to work elsewhere and the ranch would be there for him.  Additionally, Spencer was compensated for the work he did on the ranch through income from cattle sales, and with beef and fuel.  Further, when asked if Allen told him he needed to quit pursuing his education to work on the ranch, Spencer responded:  "Did he tell me?  No.  Did he tell me, I need your help this weekend?  Did he tell me I blew my knee out, and I need you to come home and help your granddad because I can't, yes."

[¶37]  All of this evidence, when viewed in the light most favorable to Spencer, shows that he did not give any consideration to Ralph or Allen in exchange for their promise that he would receive the Willey Ranch.  At most, there was a hope between the three of them that the Willey Ranch would stay in the family and Spencer would run the operation.  Spencer may have been pressured to help at inconvenient times, but there is

12

no evidence that would lead a reasonable jury to believe that Spencer helped because of the possible peril of not inheriting the Willey Ranch.

[¶38] Additionally, even if a valid oral contract existed between Ralph, Allen and Spencer, such contract is void under Wyo. Stat. Ann. § 1-23-105(a)(v) (LexisNexis 2015), otherwise known at the statute of frauds. That statute states:

> (a)  In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:
> (v)  Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year[.]

*Id.* Although the purported agreement between Ralph, Allen and Spencer was simply for a transfer in ownership of the ranch, and not specifically a sale of the real property, the statute of frauds applies nonetheless. The statute bars any oral agreement that attempts to convey or affect an interest in real property. *Redland v. Redland*, 2012 WY 148, ¶ 95, 288 P.3d 1173, 1195 (Wyo. 2012).

[¶39] Finally, Spencer appears to argue that, even if an oral contract did not exist, the district court should have allowed this issue to be tried under the theory of "detrimental reliance." A party may assert promissory estoppel where a contract does not exist or to remove the bar of the statute of frauds to an oral contract. *See Parkhurst*, ¶ 21, 94 P.3d at 460; *Davis v. Davis*, 855 P.2d 342, 347 (Wyo. 1993). The elements of promissory estoppel are:

> "(1) the existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3)  a finding that injustice can be avoided only if the court enforces the promise."

*Parkhurst*, ¶ 21, 94 P.3d at 460 (quoting *City of Powell v. Busboom*, 2002 WY 58, ¶ 8, 44 P.3d 63, 66 (Wyo. 2002)). The party asserting promissory estoppel has the burden of proving each of these elements. *Id*.

[¶40] Spencer's allegations of promissory estoppel fail for reasons similar to the contract claim. A promise is "a manifestation of intention to act or to refrain from acting in a specified way made so as to justify a promise in understanding that a commitment has been made." *Id*. Additionally, "[o]ral statements from which promissory estoppel is claimed must be more than precatory or mere statements of hope or 'agreements to

13

agree.'" *Davis*, 855 P.2d at 348. Spencer has not provided facts that give any clear and definite terms of an agreement other than he will inherit the ranch because "[t]his is just the way it is going to be." Further, Spencer was well aware that Allen had the ability to change his mind regarding the future of the Willey Ranch:

> Q  Do you know if in that trust that you and dad wrote together, did your father retain the ability to change his mind?
> A  Absolutely. It was a Revocable Trust.

[¶41] These facts viewed in the light most favorable to Spencer show that Ralph, Allen and Spencer had a hope that the Willey Ranch would continue within the Willey family. Spencer knew, however, that the trust documents that dictated the future of the Willey Ranch were always subject to change so long as Allen was still alive. These facts cannot demonstrate a clear and definite promise on the part of Ralph or Allen or that it was reasonable for Spencer to rely to his detriment on that promise.

[¶42] While Ralph, Allen and Spencer most likely had many conversations about the future of the Willey Ranch and their intent that it stay in the family, Spencer has not shown that any material facts are in dispute that support a conclusion that these conversations constituted a legally enforceable oral contract. Even if there were facts in dispute, the agreement is void under the statute of frauds and Spencer has failed to establish any facts that would remove the contract from the statute of frauds.

### 6. Rule 59 Motion

[¶43] Spencer's final argument is the district court erroneously denied his motion for new trial under W.R.C.P. 59. In that motion, Spencer sought a new trial on the basis of surprise and misconduct due to the appellees' late disclosure of several of the post 2010 amendments to the trust. Specifically, Spencer argued that had he known about these amendments to the trust earlier, he would have conducted discovery and his trial preparation differently. The district court concluded that Spencer did not show grounds that would justify granting a new trial and denied the motion.

[¶44] Trial courts have broad discretion when considering a motion for new trial. *Hannifan v. Am. Nat'l Bank of Cheyenne*, 2008 WY 65, ¶ 37, 185 P.3d 679, 693 (Wyo. 2008). We will not reverse a trial court's decision to deny a motion for new trial unless it is an abuse of discretion. *Id.*

> In determining whether there has been an abuse of discretion, we focus on the "reasonableness of the choice made by the trial court." *Vaughn,* 962 P.2d 149, 151 (Wyo.1998). If the trial court could reasonably conclude as it did and the ruling is one based on sound judgment with regard to what is right

14

under the circumstances, it will not be disturbed absent a showing that some facet of the ruling is arbitrary or capricious.

*Id.* (quoting *Jordan v. Brackin,* 992 P.2d 1096, 1098 (Wyo.1999)).

[¶45]  When evaluating this claim, it is important to recognize that this issue first came before the district court immediately before the trial began.  On the first day of trial, Spencer filed a motion requesting the court order sanctions against the appellees for the late disclosure of the trust amendments.  In addition to the sanctions, Spencer requested that the district court allow Spencer to present witness testimony he had not previously notified the appellees of and the admission of exhibits the district court had previously excluded because they were not timely disclosed.  Of significance, Spencer specifically stated he was not seeking a continuance even though he believed the late disclosure would justify that remedy.  His reason for that decision was "this case has to go forward and it has to be resolved."  After hearing arguments from the parties, the district court maintained its decision regarding the previously excluded exhibits, and reserved ruling on the witness testimony.[5]  The witnesses did testify during Spencer's rebuttal case.

[¶46]  The appellees argue that Spencer has waived the right to appeal the district court's decision not to grant a new trial because he did not request a continuance of the matter before the trial began.  In support of that argument, the appellees point to our decisions in *Meyer v. Rodabaugh*, 982 P.2d 1242, 1245 (Wyo. 1999) and *Miller v. Beyer*, 2014 WY 84, ¶ 56, 329 P.3d 956, 972 (Wyo. 2014).  In *Meyer*, the Court refused to consider Meyer's challenge to the trial court's decision to allow two late-discovered witnesses' testimony at trial.  *Id.* at 1245.  The trial court offered a trial continuance to give Meyer more time to prepare for the witnesses' testimony, but Meyer refused and requested that the testimony not be allowed.  *Id*.  The Court recited its precedent that "[t]he appropriate response from a surprised party who wishes to counter testimony is a request for a continuance, and the failure to request one precludes a claim of prejudice."  *Id*. (citations omitted).  Because Meyer refused to accept the court's offer to continue the trial, she waived her right to appeal the ruling on the admission of the witnesses' testimony.  *Id*.  The Court concluded similarly in *Miller*, where the plaintiff had denied the trial court's offer to continue the trial so that additional witness preparation could take place.  *Miller*, ¶ 56, 239 P.3d at 972.

[¶47]  In recent years, this Court has softened its stance regarding the necessity of a requested continuance in order to avoid waiving a claim of alleged surprise.  In *Morris v. State ex rel. Wyo.Workers' Safety & Comp. Div.*, 2012 WY 71, ¶ 30, 276 P.3d 399, 407 (Wyo. 2012), we determined that Morris' clear objection to and request to exclude a late

---

[5] The previously excluded exhibits were photographs of the Willey Ranch, which the district court considered had "very low relevance in the big picture as to the matter in this case[.]"

15

expert witness designation sufficiently preserved her challenge to the testimony's admission on appeal. We relied on *Morris* in *Forbes v. Forbes*, 2015 WY 13, ¶ 82, 341 P.3d 1041, 1063 (Wyo. 2015), when we determined a motion in limine and objection in a pretrial ruling was sufficient to preserve a claim regarding an expert's testimony on appeal. In *Forbes*, we explained that in the cases where the issue was waived, the trial court had offered a continuance and the allegedly surprised party declined that offer. *Id*.

[¶48] Here, we are faced with a situation that is somewhat of a hybrid of our previous cases applying the waiver rule. On the one hand, Spencer objected to the late disclosure of the trust documents in two different motions filed with the trial court. On the other hand, while the district court did not offer a continuance, Spencer preemptively addressed the issue by stating: "There is a basis for a continuance here, but we're not going to do that, because this case has to go forward and it has to be resolved." Instead of a continuance, Spencer simply requested the trial court reverse course on its decision to exclude evidence that was untimely disclosed by Spencer.

[¶49] We find the situation here is more akin to the cases where we determined a claim of surprise was waived by failing to request a continuance. Spencer asserts a new trial in this case is necessary because he would have approached the discovery process and trial preparation differently had he known about the additional trust documents. He also argues the late disclosure prevented E.W. and A.W. from being joined as plaintiffs and the trial court from being fully advised in the matter. The trial court and the parties could have remedied many of these concerns had there been a continuance of the trial. However, Spencer specifically told the court that he wanted the case to go to trial at that time. The court likely relied upon that representation by Spencer and the case did go forward. Thus, Spencer cannot argue the trial court erred when it declined to grant a new trial due to the alleged surprise stemming from the late disclosure of the trust documents when he specifically stated he did not want a continuance.

[¶50] Further, as we have already stated, the 2010 amendments and restatement to the original trust were dispositive in this matter. The 2010 amendments and restatement were validated by the jury's decision that Bertha did not exercise undue influence over Allen when he executed that document. Any further discovery about the amendments made after 2010 would have no bearing on the jury's finding. Therefore, even on the merits of the issue, the district court did not abuse its discretion when it denied Spencer's motion.

## CONCLUSION

[¶51] The district court properly instructed the jury regarding the law of undue influence in a testamentary transaction, and correctly recognized the jury needed only to consider undue influence in the context of the changes made to the trust in November 2010. Further, the district court did not err when it determined that no material facts were in

16

dispute that could prove that Ralph, Allen and Spencer had a valid and binding contract regarding the future ownership of the Willey Ranch. We decline to address Spencer's remaining issues because they are either waived or are not supported by cogent legal argument or pertinent authority.

[¶52] Affirmed.